# CHAPMAN *v.* THE UNITED STATES.

CONGRESSIONAL INVESTIGATION COMMITTEES; REFUSAL OF WIT-
    NESS TO TESTIFY; CONSTITUTIONAL LAW; WRIT
        OF ERROR TO SUPREME COURT OF U.
            S. IN CRIMINAL CASES.

1. Under sections 102, 103 and 104, R. S. U. S., providing that when a
   witness summoned to testify before a House or Senate commit-
   tee "fails to testify, and the facts are reported to either House,
   the President of the Senate or Speaker of the House, as the case
   may be, shall certify the fact under the seal of the Senate or
   House, to the District Attorney for the District of Columbia,
   whose duty it shall be to bring the matter before the grand jury
   for their action," it is not necessary, when a committee reports
   to the Senate the contumacy of a witness, for the Senate to take
   action directing the certification of the matter and the attachment
   of its seal.   The President of the Senate can act upon the report
   of the committee without previous action by the Senate.
2. Those sections of the Revised Statutes of the United States are not
   an unconstitutional invasion of the right of the Houses of Con-
   gress to make their own rules, inasmuch as those bodies may
   act by statutes as well as rules; and the rules and the statute
   are in unison upon this subject.
3. In the prosecution of such a witness who has appeared before a Sen-
   ate committee and refused to answer questions propounded to
   him, it is not necessary to allege in the indictment against him
   or to prove at the trial that action was had by the President of
   the Senate, or that the certificate was sent by him to the District
   Attorney; nor is it necessary for the prosecution to show that
   the defendant remained contumacious; but the burden is on the
   defendant to show to the contrary if such be the fact.
4. *Chapman v. The United States*, 5 App. D. C. 122, holding that an
   inquiry directed by a resolution of the Senate to be made by a
   special committee into charges that Senators had speculated in
   sugar stocks during the consideration of a tariff bill, was within
   the scope of the constitutional right and authority of the Senate
   to make, and that certain questions propounded to a witness
   summoned to appear before such a committee were pertinent
   to that inquiry, *followed and affirmed*.
5. Where, under sections 102, 103 and 104, R. S. U. S., the case of a
   witness who refused to answer questions propounded to him by
   a Senate investigating committee, is certified by the President

of the Senate under its seal to the District Attorney for this District for prosecution, and before trial the session of Congress at which such investigation was held adjourns, the defendant cannot successfully claim on the trial that such sections of the Revised Statutes violate the Fifth Amendment of the Constitution, by twice putting him in jeopardy for the same offence. With the adjournment of Congress the possibility of his punishment for contempt by the Senate is removed.

6. *Quære*, whether the constitutional provision that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb," is applicable to such a case. The offence contemplated in the Fifth Amendment is one for which the offender may be put upon trial in the ordinary courts of criminal jurisdiction, and where the plea of former acquittal or former conviction may be proper.

7. When a witness summoned to appear before a Congressional investigating committee appears, and after consultation with counsel, refuses to answer questions propounded to him, and he is prosecuted under sections 102, 103 and 104, R S. U. S., it is not necessary for the prosecution to show that the defendant *wilfully* refused to answer the questions, and that his refusal to do so was with bad faith and evil intent. His refusal itself is a deliberate and wilful act.

8. A writ of error to the Supreme Court of the United States in a criminal case in which was involved the question of the constitutionality of an act of Congress, *allowed.*

No. 550. Submitted March 25, 1896. Decided April 7, 1896.

HEARING on an appeal by a defendant indicted for and convicted of violating secs. 102, 103 and 104, R. S. U. S., in refusing to answer certain questions propounded to him before a Senate investigating committee. *Affirmed.*

The facts are sufficiently stated in the opinion.

*Messrs. Shellabarger & Wilson* for the appellant :

1. The provision found in sec. 104 R. S., that the District Attorney may lay the case before the grand jury when he has received a certificate, under the seal of the Senate, is a prohibition of, or a negative upon, the laying of said matters before the grand jury in the absence of such a certificate. *Parker's Case*, 9 Cr. 69 ; *Earley's Case*, 16 How.

618 ; *In re Heath,* 144 U. S. 93 ; *Thatcher* v. *Powell,* 6 Wheat. 124.

Where a statutory proceeding, unknown to the common law, is authorized, aiming either to divest the citizen of his property or of his liberty, there the steps prescribed by the statute as those to be taken prior to the submission of the case to the courts, become and are jurisdictional, and conditions precedent to the exercise of the power or authority by which the divestiture of the property or the deprivation of liberty is to be accomplished. Endlich, Int. of Statutes, sec. 433 ; Sutherland on Stat. Construction, sec. 454, and cases cited. In the present case, the action of the Senate provided for by sec. 104 is a condition precedent to the power and right of the prosecution to submit the case to the grand jury.

2. Where the word " wilful " occurs in a statute creating and defining a crime or misdemeanor, or a penal forfeiture, that word, *ex propria vigore,* involves, includes and means that the act prohibited by the statute shall not only be done, but that it shall be done with bad or guilty or evil intent. *Potter* v. *United States,* 155 U. S. 446 ; *Felton* v. *United States,* 96 U. S. 699 ; *United States* v. *Britton,* 108 U. S. 193 ; *Evans* v. *United States,* 153 U. S. 502 ; *Comm.* v. *Kneeland,* 20 Pick. 206 ; *Comm.* v. *Bradford,* 9 Metc. 268 ; *United States* v. *Connor,* 3 McLean, 573 ; *Dye* v. *Comm.,* 7 Grat. 662 ; *State* v. *Clark,* 29 N. J. Law, 98 ; *State* v. *Preston,* 34 Wis. 682 ; *United States* v. *Three Railroad Cars,* 1 Abb. U. S. Rep. 196 ; *Railroad Co.* v. *Nash,* 24 N. E. 884 ; 1 Bish. A. Law, 428 ; *Bowers* v. *State,* 24 Tex. App. 542.

In the present case, therefore, evidence that the defendant, in refusing to answer the questions propounded, acted in good faith, and in the honest belief, after taking counsel, that the statute did not require him to disclose private and confidential business demanded by the questions propounded, was admissible in his behalf.

There are two grounds upon which evidence of this char-

acter is admissible under the law. One of these grounds is stated by Bishop in the last edition (the 2d) of his work on Statutory Crimes, sections 822 and 823, where, speaking of an erroneous view that was put forward in the preceding section, the author says :

"This view seems to overlook the familiar principle, that when a particular condition of the mind is an element of an offence, the lack of it, produced by a mistake of law, is as available to the defendant as if it were from any other cause," citing numerous authorities.

The other ground upon which evidence of the character above indicated is admissible is stated in another and kindred class of cases, which forbid the exclusion of the testimony bearing upon the matter of the "wilfulness" of the defendant's refusal to answer the questions set forth in the indictment, which was excluded by the court below, and is where the state of the law, on which the prosecution is based, is unsettled, or obscure, or complicated, or doubtful. *Cutter* v. *The State*, 36 N. J. L. 193.

*Mr. George F. Edmunds* for the appellant :

1. The Fourth Amendment of the Constitution of the United States protected the witness against answering the questions put to him.

2. The statute violates the Fifth Amendment to the Constitution, which declares that no person shall "be subject, for the same offence, to be twice put in jeopardy of life or limb."

3. The indictment and the prosecution in the present case must fail because of the non-action of the Senate upon the report of the investigating committee of the refusal to answer. The necessary meaning and construction of the statute, if valid, is that the President of the Senate shall certify the case to the District Attorney, as the organ of the Senate and under its direction. The President of the Senate, in his character as such, is nothing else than the speaking and acting organ, exerting only, and capable of

exerting only, in respect of the proceedings of that body, precisely what it does and directs.

4. There is no allegation in the indictment that the refusal to answer was either *unlawful* or *wrongful*, and it is submitted that it is an essential element of the offence stated in the statute that the wilfulness imputed to the witness must be either unlawful or wrongful ; for it is obvious that the act of wilfully refusing in the sense of the same occurring by the mere act of the refusal of the witness, would not make the witness guilty if he misunderstood the purport and tenor of the question, or if his wilful refusal arose from a state of unsound mind. The quality, therefore, of wrongfulness must be alleged as an essential ingredient of the wilfulness that is criminal.

5. Neither a witness nor any other person can take the law into his own hands and turn himself into a judge of it contumaciously, and thus set himself up against the lawful exertion of a lawful authority. But where a party, in a case of new impression, or of any kind of doubt, with a sincere desire to obey the real law, acts under the advice of counsel upon an honest and true statement of his case, and acts in perfect good faith, and under the belief that he is doing his full duty in obedience to the real law, he cannot be guilty of a crime in so acting. "Wilfulness," in criminal statutes, includes a contumacious and defiant course of conduct.

*Mr. A. J. Dittenhoefer* for the appellant :

1. As it is an ingredient of the offence that the question must be " pertinent to the question under inquiry (sec. 102, R. S.), and as a refusal to answer a question that is not pertinent is obviously under the statute no offence, the indictment should contain such allegations as will enable the court, on demurrer, to determine whether the matter was pertinent. *People* v. *Allen*, 5 Denio, 79 ; *People* v. *Blanchard*, 90 N. Y. 320.

2. These allegations were also necessary in the indictment for the purpose of showing jurisdiction in the Senate to make the investigation. The Senate, manifestly, had no right to question the appellant merely to gratify an idle curiosity. Unless the investigation was required to aid it in performing its legislative or *quasi* judicial functions, it was concededly unauthorized. As the Senate has but limited jurisdiction, it must clearly appear in the indictment that the case is one over which it has jurisdiction. It is elementary that where an action is brought in a court of limited jurisdiction the facts showing jurisdiction must be set forth in the pleadings. *Frees* v. *Ford*, 6 N. Y. 178. This rule is, of course, applicable to investigations by a legislative body. *People* v. *Webb*, 23 St. Rep. 324.; *People* v. *Van Tassel*, 64 Hun, 444; *Kilbourn* v. *Thompson*, 103 U. S. 190; *Williamson* v. *Berry*, 8 How. 493 ; *Thompson* v. *Whitman*, 18 Wall. 457; *Knowles* v. *Gas Co.*, 19 Wall. 58 ; *Pennoyer* v. *Neff*, 95 U. S. 714.

3. The direction to the jury to find the appellant guilty if they found *the single fact* that he refused to answer the questions set forth in the indictment was, in any aspect of the case, erroneous, for it took away from the jury the consideration of the question, whether the said questions were " pertinent to the question under inquiry before the Senate committee." It was the duty of the court to instruct the jury as to what is meant by pertinency, and for the jury to determine whether the questions put to the defendant were pertinent within said definition. *Sparf* v. *United States*, 156 U. S. 102 ; *Duffy* v. *The People*, 26 N. Y. 592.

In a civil action the court may direct a verdict, but in a criminal prosecution there is no such power, even when there is no dispute as to the facts. As the court cannot direct a verdict it follows that it cannot hold, as was, in effect, done in this case, that an essential element of the offence existed without a finding of the jury to that effect.

The rules of grammatical construction require in the interpretation of the meaning of section 102 that " wilfully "

be repeated before the words " refused to answer." *Hart* v. *Kennedy*, 14 Abb. Pr. 432.

*Mr. Arthur A. Birney*, U. S. Attorney for the District of Columbia, for the United States.

Mr. Justice MORRIS delivered the opinion of the Court:

This is the second appeal in this case. The case was formerly before us on an appeal specially allowed from an order of the Supreme Court of the District of Columbia overruling a demurrer to the indictment; and we then affirmed that order and sustained the validity of the indictment. The case being remanded to the court below came on in due time for trial; and upon trial the appellant, Elverton R. Chapman, was found guilty under the indictment. Upon exceptions taken to the rulings of the trial court and from an order overruling a motion in arrest of judgment the present appeal has been prosecuted.

The case was stated in full in the opinion of the court upon the former appeal,* and need not be here stated again. Only the questions raised by the rulings of the trial court, and set forth in thirty-nine assignments of error filed in the cause, need be stated; and even these may be grouped in a few groups, and so considered together; for the exceptions and the assignments of error only raise a few questions in many different ways. The assignments, in fact, have been grouped in the brief of counsel for the appellant under five different heads, as follows: 1. Those relating to jurisdiction; 2. Those relating to the element of wilfulness as applicable to the case; 3. Those having reference to the alleged variance between the allegations and the proofs; 4. Those relating to the matter of surplusage in the indictment; and, 5. Those having reference to the instructions given by the court to the jury, as well as to those which were refused to be given. These will be noticed in their order as just stated.

---

* *Chapman* v. *United States*, 5 App. D. C. 122.

1. And first it is proper to consider the question of jurisdiction. And this question, it is claimed, is raised in various ways, and upon different considerations from those which were before us upon the former appeal, although the question was then fully considered and passed upon, and we do not see that the developments at the trial have at all altered the conditions upon which our former decision was based. That decision we have no desire to modify in any manner whatever.

But it is offered to be proved now on the part of the defendant or appellant that the conditions which under the demurrer in the former appeal were assumed to exist, did not in fact exist, to give the grand jury the right to find an indictment; and those conditions are that, as it is claimed, the matter had never been duly certified by the Senate of the United States to the District Attorney for the purpose of its being brought before the grand jury. This contention is based upon the theory that the Senate took no action in the premises; that therefore it never authorized its seal to be attached to the certificate of the matter that was sent to the District Attorney; and that, if the seal of the Senate was in fact attached to such certificate, it was so attached without the authority of the Senate and against its rules. But this theory is wholly fallacious.

Apart from the question whether, under ordinary circumstances, it is proper to inquire whether documents apparently duly certified by the proper officers of the Houses of Congress have in fact been certified by the authority of those Houses, which, if answered in the negative, would seem to preclude any such inquiry as that here suggested, we are entirely satisfied that the contention of the appellant is untenable and cannot be sustained.

Section 104 of the Revised Statutes of the United States, which is one of the three sections involved in this controversy, and which, so far as concerns the point now under consideration, is valid beyond all controversy, provides that " whenever a witness summoned as mentioned in section

102 fails to testify, and the facts are reported to either House, the President of the Senate, or the Speaker of the House, as the case may be, shall certify the fact, under the seal of the Senate or House, to the District Attorney for the District of Columbia, whose duty it shall be to bring the matter before the grand jury for their action."

Here there is not only plain authority, but an unmistakable mandate to the President of the Senate to certify the fact of the contumacy of a witness, and for that purpose to use the seal of the Senate. It is argued, it is true, that this statute is an unauthorized interference with the constitutional power of either House of Congress to make its own rules and regulations for the conduct of its business. But it is not apparent that a rule is any the less a rule because it takes the form of a statute, or that a direction by the Senate to its President to use its seal in a certain contingency is any the less valid because the other branch of the legislative power has concurred in the direction. If the conditions were reversed, and the Senate or House of Representatives sought by a rule to contravene the direction of some statute having reference to the regulation of their business, the question might be presented which is sought to be raised here on behalf of the appellant. But no such question can properly arise when the rule and the statute are in unison, as they are here. For the rule of the Senate provides, " That the Secretary shall have the custody of the seal, and shall use the same for the authentication of process, transcripts, copies, and *certificates, whenever directed by the Senate;* and may use the same to authenticate copies of such papers and documents in his office as he may lawfully give copies of;" and the Senate has already given the required direction by its concurrence in the statute providing for the use of its seal in the special emergency contemplated in section 104. We fail to see where there was any want of authority for the attachment of the seal of the Senate.

We fail also to see wherein any action by the Senate upon the report of its committee was required as a prelim-

inary to the attachment of its seal or to certification by the President of the Senate to the District Attorney. No action is required or contemplated by the statute. It might possibly be that adverse action by the Senate undoing the work of its committee might prevent the President of that body from certifying the contumacy to the District Attorney as prescribed by the statute. But in view of the specific provisions of the statute, which the Senate must be presumed to have had in mind, inaction must be regarded as the equivalent of a resolution to let the law take its course.

Nor is it apparent to us that there is any necessity for allegation in the indictment or for proof at the trial, that action was had by the President of the Senate or that a certificate was sent by him to the District Attorney and was laid by the latter before the grand jury. The transmission of a certificate by the President is a proper preliminary in such cases to set the wheels of justice in motion ; because otherwise the District Attorney may not know that an offence has been committed. But no more in this case than in the case of any other offence against the law can it reasonably be required that the steps usually preliminary to indictment should be either stated or proved. In order to maintain the validity of an indictment and to sustain a conviction thereunder, it is not necessary in ordinary cases either to allege or prove either the arrest of the accused, or the swearing out of a warrant against him, or the examination of witnesses before a grand jury, or any other of the processes usual before indictment. And there does not seem to be any good reason for a different rule in the present case. The offence, if offence there was, under the statute, plainly was complete when the accused refused to answer the questions put to him, subject, of course, to the qualification that the questions were pertinent to the matter under inquiry, and subject also to the possible qualification that the committee or Senate might withdraw its questions, or that the accused at any time before the President of the Senate transmitted his certificate to the District Attorney,

might be permitted to purge himself of the contempt and to answer the questions propounded to him.

The offence in question is one which comes within the category of offences against the administration of public justice. . The refusal of the appellant in this case to answer the questions put to him is not different in principle from a similar refusal to answer a proper interrogatory upon a trial in a court of justice. Such refusal in a court of justice is characterized as a contempt of court, to be punished in accordance with the inherent power of a court to punish contempts of its authority; and in some jurisdictions it is made a criminal offence, to be punished in accordance with the usual course of the criminal law. But in all cases, although the offence is in a certain sense complete as soon as the refusal occurs, yet it is an offence from its nature affording a *locus penitentiæ*, and to be condoned by the authority against which it is committed, if in due season the party recedes from it in such manner as that his repentance may be available to serve the ends of justice in the inquiry then in-progress. But the *locus penitentiæ* in the present instance was at an end when, upon the report of the committee to the Senate, the appellant still remained contumacious, and the certificate of contumacy was sent out by the President of the Senate. It was not, however, incumbent on the prosecution to show that the defendant had remained contumacious, but on the defendant to show the contrary, if such had been the fact.

But a more serious question is presented by the claim now made on behalf of the appellant that the prosecution against him is in violation of the Fourth and Fifth Amendments of the Constitution of the United States. The gravity of this question, involving, as it does, both the personal liberty of the citizen and the highest prerogatives of the Legislature of the Union, demands that it should receive our most earnest consideration.

It is argued, in the first place, that the Fourth Amendment of the Constitution, which provides that " the right of

the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated," protected the appellant in this case, when appearing as a witness before the committee of the Senate, from answering the questions propounded to him by that committee.    It is claimed that the inquiry then pending was not of the character which the Senate was authorized to institute ; that it was entirely lawful, however improper or in bad taste it might be, for Senators to speculate in so-called sugar stocks during the pendency of the tariff bill before the Senate ; that the inquiry was justified only on the theory that Senators so offending might properly be expelled from the Senate ; that it would be a tyrannical and wicked proceeding and not in accordance with the spirit of the Constitution to expel a Senator for any such cause ; and that therefore no statute or court could aid the Senate in such work of expulsion by punishing a citizen who refuses to allow an inquiry into his private transactions based upon any such purpose.    But it seems to us that this contention has already been disposed of so far as we may dispose of it, in our opinion on the former appeal in this case.    There we held, with reference to this very provision of the Constitution, that the inquiry directed by the resolution of the Senate to be made by its committee was one proper to be made and within the constitutional right and authority of the Senate to make, and that the questions propounded to the appellant by the committee were pertinent to that inquiry.    It necessarily followed that, in propounding those questions, there was no unreasonable search into the private affairs of the witness, and no constitutional guarantee was violated.    And it is a fundamental principle of law, and one absolutely essential to the due administration of the law, that, in the courts of justice or in any body authorized to institute a judicial inquiry, as the Senate was in this case, no private affair is too sacred to be the subject of examination, if it is pertinent to the subject of inquiry, unless it is protected from examination upon some ground of privilege.

The argument for the defendant, however, is not now so much directed to the supposed immunity guaranteed by the Fourth Amendment of the Constitution, as to that claimed to be afforded by the Fifth Amendment. The contention here is that the statute of January 21, 1857 (11 Stat. 155), incorporated into the Revised Statutes of the United States as sections 102, 103 and 104, under which the present prosecution has been instituted, is in violation of the provision in the Fifth Amendment of the Constitution, which declares that no person shall " be subject for the same offence to be twice put in jeopardy of life or limb." It is argued that the Senate derives its rights and powers from the Constitution alone; that among these is the inherent right and power to punish contempts of its authority ; that Congress had no right to take away this power and bestow it upon the courts of law ; and that the statute, by attempting so to vest authority in the courts of law and by providing additional punishments for the offence, had the effect of putting a person twice in jeopardy for the same identical offence, or of subjecting him to be so put in jeopardy.

We do not deem it necessary to follow counsel in their very able and ingenious argument upon this point. It seems to us that it is sufficient answer to it that the appellant has not in fact been twice put in jeopardy, and cannot now by any possibility be twice put in jeopardy for this offence. The case of *Anderson* v. *Dunn*, 6 Wheat. 204, which, although overruled in its main features by the decision in *Kilbourn* v. *Thompson*, 103 U. S. 168, yet undoubtedly remains as authority for the extent of the punishment which may be imposed by either House of Congress for contempt, holds that the extent of the punishing power which the deliberative assemblies of the Union may assume, is the power of imprisonment, and that this necessarily terminates with their adjournment. The Senate, against whose authority the contempt in question was committed, together with the Congress of which it formed a part, has passed into history. The session or sessions during which the punishment for

contempt might have been imposed and for which the punishment might have continued, have long since come to an end : and the possibility of such punishment is now and forever absolutely precluded. It is impossible, therefore, in this instance, that the appellant should be subject to be twice put in jeopardy for the same offence. The question might more properly be raised if the Senate had first exercised its power to punish for contempt and this prosecution had afterwards supervened ; or if, after the termination of this prosecution, the Senate should assume to impose its own punishment as for a contempt. But a statute cannot be held unconstitutional because it may happen that, in its application, one may be subjected to be twice put in jeopardy for the same offence. It is the fact of being twice put in jeopardy, or the liability of an individual to be twice put upon trial for the same offence, that the Constitution prohibits, not the enactment of legislation that might, in its enforcement, in connection with other action, have the effect of imposing a double penalty for the same offence.

Moreover, it is questionable whether the constitutional provision is at all applicable to cases like the present. Contempt of the authority of Congress, or of the authority of either of its Houses, is of course an offence ; but certainly such a contempt as the refusal to answer proper interrogatories in any inquiry pending before either House is not such an offence as was contemplated by the Fifth Amendment of the Constitution. The offence contemplated in the amendment is one for which the offender may be put upon trial in the ordinary courts of criminal jurisdiction, and where the plea of former acquittal or former conviction may be proper. The offence of refusing to answer an interrogatory, either in a court of justice, or before one of the Houses of Congress, or before any committee of either House, is not an offence in the sense of the criminal law, unless it is specially so made, as in this case, by statute ; and its punishment as a contempt, is not punishment in the legal or constitutional sense, but merely process in aid of the ad-

ministration of justice. And this is so much the case that the contempt is held to be purged upon reconsideration of his action by the party in contempt, and his consent to answer as required. The punishment for such contempt is in all cases that the party stand committed to imprisonment until he consents to answer. This is not punishment or jeopardy, as contemplated by law, for an offence cognizable at law. And when the act of refusal to answer is made by statute an offence at law, then and then only is the person put in jeopardy in the sense of the Constitution.

2. It is claimed, in the second place, that, in order to sustain a valid conviction of the appellant, the element of wilfulness must have been shown, and that it was necessary that it should appear that his refusal to answer the questions put to him was in bad faith and with evil intent. It is claimed for the appellant that he acted in the utmost good faith, upon the advice of learned counsel, on which he had the right to rely, and solely for the protection of what he believed to be his constitutional rights. Bad faith and evil intent, in the sense in which those terms are here used, are not charged against the appellant by the prosecution; and it is argued that, without those elements of criminality, there could not have been any offence here, in the legal sense of the term.

But the statute itself would seem to supply the answer to this argument. The statute (sec. 102) provides that " every person who, having been summoned as a witness by the authority of either House of Congress, to give testimony or to produce papers upon any matter under inquiry before either House, or any committee of either House of Congress, wilfully makes default, or who, having appeared, refuses to answer any question pertinent to the question under inquiry, shall be deemed guilty of a misdemeanor, punishable," &c. Here the expression *wilfully*, which is applied to qualify default in appearing in response to a summons, seems to have been studiously omitted as wholly superfluous and unnecessary in the qualification of a refusal to

answer questions propounded.   The refusal to answer necessarily implies wilfulness in the legal sense, and the question of bad faith or evil intent has no place whatever in the case.   The purpose of the investigation is wholly frustrated by the refusal to answer ; and the defeat of the public interest is complete whatever may have been the motive of the witness in refusing to testify.   For the purposes of the law, therefore, the actual intent of the witness is of no consequence whatever.   But he was a person of mature years, a man of intelligence, and under no legal disability or disqualification ; and he must be held to have contemplated the consequences of his own deliberate act.   He must be held to have intended the result which followed his refusal, which was the defeat of the pending investigation, which failed for the want of such testimony as was sought from him ; and so far as that investigation was concerned, it was plainly a matter of no consequence that he may have believed himself to have been justified.   His refusal to testify was a deliberate and wilful act, all the more deliberate and wilful because he took counsel upon the subject and took time to consider the consequences ; and if such deliberate and wilful act, in plain violation of the specific terms of the statute, does not constitute an offence under the statute, unless there is also superadded the element of moral guilt and deliberate purpose to violate the moral law, it would be simply impossible to procure any conviction under the statute, and the law would be no more than a dead letter.

Often, of course, the element of intent is a necessary ingredient of a criminal offence, essential to be alleged and essential to be proved.   But from deliberate action in violation of law, the evil intent, not necessarily moral guilt, is always assumed.   The evil intent which, on behalf of the appellant, it is claimed here should have been shown, is the purpose to commit a moral wrong.   It would be fatal to the existence of municipal law, certainly to the existence of all statutory law, if the guilt or innocence of one charged with the violation of its provisions were to be determined by his

purpose to do or not to do that which was wrong in the sense of the moral law.

We fail to find, in any of the cases cited on behalf of the appellant, anything that contravenes this position. The strongest of them on behalf of the appellant, and that on which most reliance is placed, is the case of *Potter* v. *United States*, 155 U. S. 438. But that case, in our opinion, does not sustain the appellant's contention. That was a case where the defendant, the cashier of a national bank, was indicted for unlawfully certifying a check in violation of the National Banking Act, when the drawer of the check had no funds on deposit, the provision of the National Banking Act being in specific terms that any officer of a national banking association who should *wilfully* violate any provision of the act should be deemed guilty of a misdemeanor. It was held by the Supreme Court of the United States that the action of the officer must appear to have been done *wilfully*, in the terms of the statute, and that is, with evil intent or an intent to defraud the association or its depositors or creditors, in order to render him guilty of a misdemeanor. But as the court is at pains to point out, the act of certifying a check where there is no deposit is not of itself a fraudulent or illegal act, from which wilfulness may be inferred. As the court says, it might be merely part of a transaction involving a loan upon security from day to day ; and the statute itself recognizes the fact that the act in itself is not illegal or wrong, because by express language it only makes it a misdemeanor when it is done *wilfully* and for the purpose of perpetrating a fraud. No such distinction can arise where the statute necessarily implies wilfulness from the nature of the act done, and where consequently it omits all qualification of express wilfulness.

Failure to appear in response to a summons may well be due to other causes than wilfulness or a deliberate purpose to disobey the mandate of the law ; and it would have been manifestly unjust to constitute it a misdemeanor unless it was done wilfully. Hence arises the propriety of that qual-

ification in the statute.   But refusal upon examination to answer a pertinent question is in its nature a deliberate and wilful act; and it is all the more deliberate and wilful when counsel has been taken and there has been full consideration of the consequences of persistence in the refusal.   A requirement of the statute that such refusal should not be regarded as a misdemeanor unless it were wilful, or a construction of the statute that imports into this clause the qualification of wilfulness properly affixed to the previous clause, would in our opinion be an absurdity.

The refusal to answer being, therefore, in its nature a deliberate and wilful act, and being denounced by the statute as a misdemeanor, it cannot avail a recusant witness that he may have believed himself to have been only asserting a constitutional right.   If he was mistaken in his belief, however honest in a moral sense that belief may have been, and the statute is a valid exercise of the legislative power, it is beyond question that his mistake will not excuse him for his violation of the law.   For a mistake of the criminal law will not excuse any man, any more than will ignorance of it. Any different theory would be destructive of all the safeguards of society.

We are of opinion that none of the cases cited on behalf of the appellant are applicable to this case, and that the trial court was right in disregarding the question of the appellant's wilfulness as one of fact to be submitted to the jury.

3. With reference to the other questions raised—namely, the alleged variance between the allegations of the indictment and the proof on the trial, the question of surplusage in the indictment, and the instructions given and refused— we have given them all careful consideration; but we find nothing in any of them that would, in our opinion, justify a disturbance of the judgment rendered in this case.   We do not deem it necessary to consider any of these questions here in detail, for the reason that they seem to us to present nothing that has not already been well settled or disposed

of, and that no good purpose could be subserved by an elaborate discussion of them.   They mostly present in various forms the questions which we have already considered ; and they are evidently not greatly relied upon by the appellant, on whose behalf the main argument has been on the question of wilfulness and the constitutional questions supposed to be involved.

We find no error committed in the trial of this case ; and we must *affirm the judgment.   And it is so ordered.*

On April 16, 1896, *Messrs. Shellabarger & Wilson* and *Mr. Edmunds*, on behalf of the appellant, filed a petition for the allowance of a writ of error to the Supreme Court of the United States.

*Mr. Birney*, for the United States, opposed the petition.

On April 17, 1896, the writ of error was allowed, Mr. Chief Justice ALVEY delivering the opinion of the Court :

The application for the allowance of a writ of error to the Supreme Court of the United States in this case, is based upon the terms of the act of Congress of February 9, 1893, for the organization of this court.   The terms of the act relied on are those found in the eighth section, whereby it is declared that a writ of error may be prosecuted in any case " wherein is involved the validity of any patent or copyright, or in which is drawn in question the validity of a treaty or statute of, or an authority exercised under the United States."   This provision seems to be an exact transcript, though somewhat differently arranged in the section, from the second section of the act of March 3, 1885, entitled " An act to regulate appeals from the Supreme Court of the District of Columbia, and the Supreme Courts of the several Territories."

This last-mentioned act has been construed by the Supreme Court of the United States in several cases ; as in the cases of *In re Heath*, 144 U. S. 92 ; *Cross* v. *United*

*States*, 145 U. S. 571; and *Cross* v. *Burke*, 146 U. S. 82. In this last mentioned case, the Supreme Court said, " We have held this court has no jurisdiction to grant a writ of error to review the judgments of the Supreme Court of the District in criminal cases, either under the Judiciary Act of March 3, 1891, or under the act of Congress of February 6, 1889, or any other;" citing *In re Heath*, and *Cross* v. *United States, supra*. And in the same case, in speaking of the act of March 3, 1885, before referred to, the court expressly say : " The act does not apply in either section to any criminal case "—citing *Farnsworth* v. *Montana*, 129 U. S. 104, and *United States* v. *Sanges*, 144 U. S. 310.

Upon these authorities we have had a very decided impression that a writ of error, *in a criminal case*, would not lie from the Supreme Court of the United States to this court ; and we think that has been the general understanding. And without anything more upon the subject, we should have felt bound to refuse the writ of error applied for. But in the more recent case of *In re Chapman*, 156 U. S. 211, and again *In re Belt*, 159 U. S. 95, 100, both cases being applications for the writ of *habeas corpus*, the Supreme Court said : " We have heretofore decided that this court has no appellate jurisdiction over the judgments of the Supreme Court of the District of Columbia *in criminal cases* or on *habeas corpus;* but whether or not the judgments of the Supreme Court of the District, reviewable in the Court of Appeals, may be reviewed ultimately in this court in such cases, when the validity of a statute of, or an authority exercised under, the United States is drawn in question, we have as yet not been obliged to determine." 159 U. S. 100.

On this intimation of the Supreme Court, we have concluded that the best and safest course for this court to pursue on this application is to grant the writ of error as prayed ; and if it be thought that it will not lie in such case as the present, the Government's attorney can at once move to dismiss, and thereby avoid delay. We shall therefore allow the writ of error as prayed ; *and it is so ordered.*

*Writ of error allowed.*