## CROSS *v.* UNITED STATES.

ERROR TO THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 1525.  Submitted April 25, 1892. — Decided May 16, 1892.

Under the act of February 6, 1889, " to provide for writs of error in capital cases," 25 Stat. 655, c. 113, a writ of error does not lie from this court to the Supreme Court of the District of Columbia to review a judgment of that court in general term affirming a judgment of the trial court convicting a person of a capital crime.

MOTION TO DISMISS.  The case is stated in the opinion of the court.

*Mr. Solicitor General* for the motion.

*Mr. Charles Maurice Smith* and *Mr. Joseph Shillington* opposing.

MR. CHIEF JUSTICE FULLER delivered the opinion of the court.

William D. Cross was tried upon an indictment for murder in the Supreme Court of the District of Columbia, holding a criminal term, in March, 1890, and a verdict of guilty having been returned, and a motion for a new trial heard and overruled, was sentenced to death.  He thereupon prosecuted an appeal to the court in general term, which reversed the conviction and granted a new trial.  19 Dist. Columb. 562.

A second trial was had at the June, 1891, special criminal term, which again resulted in a verdict of guilty, and, a motion for a new trial having been made and overruled, he was, July 30, 1891, sentenced to be executed January 22, 1892.  From this conviction he prosecuted an appeal to the court in general term, which, on January 12, 1892, finding no error in the record, affirmed the judgment.  The opinion, by Cox, J., will be found in 20 Washington Law Rep. 98.

On January 21 a writ of error from this court was allowed,

on petition, by the Chief Justice of that court, citation was signed and served, and the time for filing the record enlarged.

On the same day an order was entered by the court in general term, "that the execution of the sentence of death pronounced against the defendant by the special term of this court on the thirtieth day of July in the year of our Lord one thousand eight hundred and ninety-one, to take place on the twenty-second day of January, 1892, be and the same is hereby postponed until the tenth day of June, 1892, between the same hours specified in the said judgment of the said special term."

The case comes before us on motion to dismiss the writ of error.

Under acts of Congress, the Supreme Court of the District of Columbia consists of one chief justice and six associate justices, appointed by the President, by and with the advice and consent of the Senate, and holding their offices during good behavior. Special and general terms of the court, and appeals from the former to the latter, are provided for. General terms may be held by three justices, two constituting a quorum, while special terms are held by one justice. Any one of the justices may hold a criminal court for the trial of all crimes and offences arising in the District. Rev. Stat. Dist. Col. §§ 750, 753, 754, 757, 762, 763, 772; 19 Stat. 240, c. 69, § 2; 20 Stat. 320, c. 99, § 1.

By the act of July 7, 1838, 5 Stat. 306, c. 192, a Criminal Court was established in the District of Columbia; and it was held in Ex parte Bradley, 7 Wall. 364, at our December term, 1868, that under the act of March 3, 1863, 12 Stat. 762, c. 91, by which the courts of the District were reorganized, the Criminal Court still remained a separate and independent court, although held by a justice of the Supreme Court of the District created by the act, and that the only jurisdiction of the Supreme Court in criminal cases was in an appellate form. But by the act of June 21, 1870, 16 Stat. 160, c. 141, it was provided, as now embodied in section 753 of the Revised Statutes of the District, that the several general terms

and special terms of the various courts, circuit, district, and criminal, should be considered terms of the Supreme Court of the District, and that the judgments, decrees, sentences, etc., of the general terms, and of the special terms, and of the various courts should be the judgments, decrees, sentences, etc., of the Supreme Court, but that this should not affect the right of appeal as provided by law.

Section 772 reads: "Any party aggrieved by any order, judgment or decree, made or pronounced at any special term, may, if the same involve the merits of the action or proceeding, appeal therefrom to the general term of the supreme court, and upon such appeal the general term shall review such order, judgment or decree, and affirm, reverse or modify the same, as shall be just."

And under section 770: "The supreme court in general term, shall adopt such rules as it may think proper to regulate the time and manner of making appeals from the special term to the general term," etc.

The act of February 25, 1879, 20 Stat. 320, c. 99, forbade any justice to sit in general term to hear an appeal from any judgment or decree or order which he may have rendered at special term.

By the act of 1838 a writ of error lay to the Criminal Court from the Circuit Court of the District, and postponement of execution in capital cases was provided for, and this was carried into § 845 of the District Revised Statutes.

The Supreme Court sitting at special term and the Supreme Court sitting in general term are the same tribunal, but the court in general term exercises appellate powers and is an appellate court, although it may also exercise jurisdiction in hearing matters in the first instance, (Rev. Stat. Dist. Col. §§ 770, 800,) and the final judgments or decrees which may be brought here by appeal or writ of error are those rendered by the general term. Such review may be had when the matter in dispute exceeds $5000, (Rev. Stat. § 705; 20 Stat. 320, c. 99, § 4; 23 Stat. 443, c. 355, § 1; Rev. Stat. Dist. Col. §§ 846, 847;) but necessarily this does not apply to criminal cases

The language of sections 846, 847 of the Revised Statutes of the District of Columbia in reference to the reëxamination of the final orders, judgments or decrees of the Supreme Court of the District is taken from the act of March 3, 1863, 12 Stat. 762, 764, c. 91, § 11, which was itself adopted from section 8 of the act of February 27, 1801, 2 Stat. 103, c. 15, repealed in the act of February 25, 1879, 20 Stat. 320, c. 99, § 4, and referred to in the act of March 3, 1885, 23 Stat. 443, c. 355, and is always coupled with the provision that the appellate jurisdiction should not be exercised except where the matter in dispute exceeds a certain sum, or, under the act of 1885, where the validity of a patent or copyright is involved or the validity of a treaty or statute of or authority exercised under the United States is drawn in question.

We have, of course, no general authority to review, on error or appeal, the judgments of the Circuit Courts of the United States in cases within their criminal jurisdiction, or those of the Supreme Court of the District of Columbia or of the Territories; and when such jurisdiction is intended to be conferred, it should be done in clear and explicit language. *Farnsworth* v. *Montana*, 129 U. S. 104; *United States* v. *Sangés*, 144 U. S. 310, 320; *United States* v. *More*, 3 Cranch, 159.

*United States* v. *More* was decided in February, 1805, and from that time it has been assumed that criminal cases could not be brought from the courts of the District to this court.

In such cases, remarked Mr. Justice Miller in *Ex parte Bigelow*, 113 U. S. 328, 329, "The act of Congress has made the judgment of that court conclusive, as it had a right to do, and the defendant having one review of his trial and judgment has no special reason to complain."

By sections 651 and 697 of the Revised Statutes provision was made for a review of questions arising in criminal cases under certificates of division of opinion, and this was so provided as early as 1802. Act of April 29, 1802, § 6, 2 Stat. 156, 159, c. 31. But this provision has never been supposed to refer to the courts of the District of Columbia.

By section five of the Judiciary Act of March 3. 1891. 26

Stat. 826, c. 517, it is provided that appeals and writs of error may be taken "from the District Courts or from the existing Circuit Courts directly to this court in cases of conviction of a capital or otherwise infamous crime;" and we have been constrained to hold that the judgments of the Supreme Court of the District of Columbia in criminal cases are not embraced by the provisions of that section. *In re Heath, Petitioner*, 144 U. S. 92. Unless, therefore, as is indeed not disputed, this writ of error comes within the act of Congress of February 6, 1889, entitled "An act to abolish Circuit Court powers of certain District Courts of the United States and to provide for writs of error in capital cases and for other purposes," 25 Stat. 655, c. 113, it cannot be maintained. This act contains seven sections, of which the first five relate, in substance, to the establishment of Circuit Courts for the Eastern District of Arkansas, the Northern District of Mississippi, and the Western District of South Carolina, and the withdrawal of Circuit Court powers from certain District Courts. The seventh provides when the act shall take effect.

Section six is as follows: "That hereafter in all cases of conviction of crime the punishment of which provided by law is death, tried before any court of the United States, the final judgment of such court against the respondent shall, upon the application of the respondent, be reëxamined, reversed or affirmed by the Supreme Court of the United States upon a writ of error, under such rules and regulations as said court may prescribe. Every such writ of error shall be allowed as of right and without the requirement of any security for the prosecution of the same or for costs. Upon the allowance of every such writ of error, it shall be the duty of the clerk of the court to which the writ of error shall be directed to forthwith transmit to the Clerk of the Supreme Court of the United States a certified transcript of the record in such case, and it shall be the duty of the Clerk of the Supreme Court of the United States to receive, file and docket the same. Every such writ of error shall during its pendency operate as a stay of proceedings upon the judgment in respect of which it is sued out. Any such writ of error may be filed and docketed

in said Supreme Court at any time in a term held prior to the term named in the citation as well as at the term so named; and all such writs of error shall be advanced to a speedy hearing on motion of either party. When any such judgment shall be either reversed or affirmed the cause shall be remanded to the court from whence it came for further proceedings in accordance with the decision of the Supreme Court, and the court to which such cause is so remanded shall have power to cause such judgment of the Supreme Court to be carried into execution. No such writ of error shall be sued out or granted unless a petition therefor shall be filed with clerk of the court in which the trial shall have been had during the same term or within such time, not exceeding sixty days next after the expiration of the term of the court at which the trial shall have been had, as the court may for cause allow by order entered of record." Taking the sixth section in connection with the others, it would be quite within accepted rules of construction to conclude that it refers only to Circuit and District Courts of the United States, and this is worthy of mention, though not the ground of our decision.

It is contended on behalf of the government that the writ of error will not lie because the Supreme Court of the District of Columbia is not a court of the United States, within the intent and meaning of the section. *McAllister* v. *United States*, 141 U. S. 174, is cited with the decisions referred to therein, as sustaining that view; but it is to be remembered that that case referred to territorial courts only; and, moreover, if the disposal of the motion turned on this point, the words "any court of the United States" are so comprehensive that, used as they are in connection with convictions subject to the penalty of death, the conclusion might be too technical that Congress intended to distinguish between courts of one class and of the other. But the difficulty with the section is that it manifestly does not contemplate the allowance of a writ of error to any appellate tribunal, but only to review the final judgment of the court before which the respondent was tried, where such judgment could not otherwise be reviewed by writ of error or appeal. It is the final judgment

of the trial court that may be reëxamined upon the application of the respondent, and it is to that court the cause is to be remanded, and by that court that the judgment of this court is to be carried into execution. The obvious object was to secure a review by some other court than that which passed upon the case at *nisi prius*. Such review by two other courts was not within the intention, as the Judiciary Act of March 3, 1891, shows. This is made still clearer by the further provision that no such writ of error " shall be sued out or granted unless a petition therefor shall be filed with the clerk of the court in which the trial shall have been had during the same term or within such time, not exceeding sixty days next after the expiration of the term of the court at which the trial shall have been had, as the court may for cause allow by order entered of record." This language is entirely inapplicable to the prosecution of a writ of error to the judgment of an appellate tribunal affirming the judgment of the trial court. And the case before us shows this.

The Supreme Court of the District of Columbia sitting in general term in review of the sentences of the Criminal Court held by one of the justices, occupies the same position as any other court with appellate jurisdiction. It has in this case affirmed the judgment of the Criminal Court. The writ of error from this court was not granted upon a petition filed during the term, or within sixty days next after the expiration of the term, of the court at which the trial was had and sentence pronounced, yet the statute is explicit that no such writ of error shall be sued out or granted unless thus applied for. *Ball* v. *United States*, 140 U. S. 118, 129. What happened here would happen in most, if not all, cases if appellate tribunals were embraced by the section. Compliance with the law would be wellnigh, if not altogether, impossible.

It is to be observed that the writ runs to the judgment of the general term, yet if this man goes to his death, it is not by force of the judgment of the general term, but of the sentence of the criminal term. The court in general term did indeed postpone the execution of the sentence to another day, a postponement rendered necessary by the granting of this writ, but its judgment

was one of affirmance merely. We have recently had occasion to consider the distinction between such a judgment and the original sentence, in *Schwab* v. *Berggren* and *Fielden* v. *Illinois*, 143 U. S. 442, 452. It was ruled in those cases that the presence of defendants condemned to death was not essential when the judgments were affirmed against them by the appellate court, and that the sentences were not vacated by the writs of error, but only their execution stayed pending proceedings in the higher court. The Supreme Court of Illinois, under statutory authority, fixed another day when the punishment prescribed by the judgments which it affirmed should be inflicted, but it was held that that did not affect the question raised, as no re-sentence was required; and, besides, that the time and place of execution were not strictly parts of the judgment or sentence unless made so by statute. 143 U. S. 452.

In the light of these considerations, we cannot entertain any other view of the purview of this section than that above expressed. We are of opinion that the act of February 6, 1889, did not authorize the issue of this writ, and we are therefore compelled to order the writ of error to be

*Dismissed.*