### YOUNG v. UNITED STATES.
#### No. 11782.

United States Court of Appeals District of Columbia Circuit.

Argued Dec. 15, 1953.

Decided April 8, 1954.

Writ of Certiorari Denied June 7, 1954.

See 74 S.Ct. 870.

19. Cf. Sec. 7(a) of the Federal Power Act, 41 Stat. 1067 (1920), as amended, 16 U.S.C.A. § 800.

Mr. James F. Reilly, Washington, D. C., with whom Mr. Harry A. Calevas,

Washington, D. C., was on the brief, for appellant.

Mr. William A. Paisley, Sp. Asst. to the Atty. Gen., with whom Messrs. Leo A. Rover, U. S. Atty., and J. Frank Cunningham, Attorney, Dept. of Justice, Washington, D. C., were on the brief, for appellee. Mr. John F. Byerly, Atty., Dept. of Justice, Washington, D. C., entered an appearance for appellee.

Before WILBUR K. MILLER, FAHY and WASHINGTON, Circuit Judges.

WASHINGTON, Circuit Judge.

Appellant was tried in the District Court on four counts of perjury. D.C.Code 1951, Tit. 22, § 2501. The first three counts concerned his testimony before the Reconstruction Finance Corporation Subcommittee of the Senate Banking and Currency Committee. The fourth concerned his testimony before the grand jury. He was found guilty on all four counts and sentenced to a term of imprisonment of from four months to two years, to run concurrently, on each. Since the sentences are to run concurrently the judgment of the District Court must be upheld if the conviction of appellant on any count is valid. Kiyoshi Hirabayashi v. United States, 1943, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774. We consider appellant's conviction on the first count to be clearly valid. We accordingly affirm on that count, and in this opinion will discuss only those contentions of the appellant which are applicable to it.

At the outset appellant attacks the validity of the indictment. Each count asserts that an oath was duly taken before "a competent tribunal * * * in which a law of the United States authorizes an oath to be administered * * *." It does not set forth the name of the individual who administered the oath or his authority to do so. This, appellant urges, renders the indictment fatally defective. He relies on a section of the District of Columbia Code which provides that a perjury indictment must set forth "by what court, or before whom the

oath was taken (averring such court, or person or persons, to have a competent authority to administer the same) * * *." D.C.Code 1951, Tit. 23, § 204. Since the passage of this section,[1] however, the Federal Rules of Criminal Procedure, 18 U.S.C.A. have been promulgated. Rule 7(c) provides that "The indictment or the information shall be a plain, concise and definite written statement of the essential facts constituting the offense charged. * * * It need not contain * * * any other matter not necessary to such statement. * * *" The substantive elements of perjury in this jurisdiction are set out in Section 22–2501 of the District of Columbia Code. That section is nearly identical in its terms to Section 1621 of Title 18 of the United States Code, and under the latter section an allegation of the name or authority of the individual who administered the oath has been held to be unnecessary. United States v. Debrow, 1953, 346 U.S. 374, 74 S.Ct. 113. Similar reasoning is applicable here. We do not consider that Section 23–204 of the District of Columbia Code—which is purely procedural—has the effect of adding to the substantive elements of perjury ("the essential facts constituting the offense charged") a requirement that the name of the giver of the oath be alleged. The instant indictment thus complies with Rule 7(c), and that compliance sustains it. See Fed.R.Crim.P. 1; 18 U.S.C. § 687 (1946)*; United States v. Bickford, 9 Cir., 1948, 168 F.2d 26.

Appellant also attacks the indictment on the basis of the selection of the grand jury panel. The jury commissioners excluded from the jury list all persons who voted outside the District of Columbia, on the ground that they could not be "residents" of the District of Columbia.[2] This practice, which has since been discontinued, was certainly erroneous.[3] The question is whether it warrants reversal.

Appellant relies primarily on Ballard v. United States, 1946, 329 U.S. 187, 67 S.Ct. 261, 91 L.Ed. 181, and Thiel v. Southern Pacific Co., 1946, 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181. In those cases convictions were reversed because of the exclusion from the jury panel of women (Ballard) and daily wage earners (Thiel). In both cases a cohesive class, united by common interests, was excluded.[4] The Court stressed this fact and demonstrated a concern to secure jury panels which were representative of the communities from which they were drawn. In Thiel it listed six groups—economic, social, religious, racial, political and geographical—which could not be excluded. 328 U.S. at page 220, 66 S.Ct. at page 985. Here none of these were excluded. Persons who reside in the District of Columbia but vote elsewhere come from either sex and from all racial, religious and political groups. They comprise no cohesive group. Their exclusion does not threaten the representative nature of jury panels. We do not believe, therefore, that the Ballard and Thiel cases are applicable. The exclu-

1. Section 204 was incorporated into the District of Columbia Code by the Act of March 3, 1901, 31 Stat. 1189. Its inclusion in the 1951 edition of the Code does not constitute a reenactment and it has not otherwise been reenacted.

* Now 18 U.S.C.A. § 3771.

2. D.C.Code 1951, Tit. 11, § 1417, requires all District of Columbia jurors to be "residents."

3. United States v. Cross, D.C., 9 Mackey 365, appeal dismissed, 1892, 145 U.S. 571, 12 S.Ct. 842, 36 L.Ed. 821; United States v. Nardello, D.C.1886, 4 Mackey 503.

Both cases concern the converse of the instant issue: a prospective juror was challenged as not being a resident of the District of Columbia because he voted elsewhere. Held, the juror was a resident. The applicable statute differed from the present one only in that it contained no requirement that jurors be able to read or write.

4. See, also, Dow v. United States Steel Corp., 3 Cir., 1952, 195 F.2d 478 (naturalized foreign born citizens, negroes, veterans, labor people); United States v. Roemig, D.C.N.D.Iowa 1943, 52 F. Supp. 857 (women).

sion here is a mere irregularity and does not warrant reversal.[5]

■ Appellant next contests the competency of the Subcommittee before which he testified. He alleges that at the time he gave the testimony on which the first three counts are based the Subcommittee was not engaged in a legislative function.

The instant Subcommittee was authorized by the Senate to conduct a study of the operations of the Reconstruction Finance Corporation.[6] Pursuant to this authorization it conducted extensive hearings and issued three interim reports. The third, issued on February 5, 1951, was entitled "Favoritism and Influence."[7] It said that "there has been improper use of the Corporation's vast authority in response to the influence which persons outside of the RFC have over individual members of the Board of Directors."[8] It added: "The individual named most frequently in the reports of alleged influence which have reached the subcommittee is E. Merl Young. * * * By July of 1948 his salary at RFC had risen to $7,193 a year. More recently, Merl Young has been an $18,000-a-year vice president of the Lustron Corp. and, simultaneously, a $10,000-a-year official of F. L. Jacobs Co. Both were RFC borrowers at the time. * * * It seems that Young acquired and held both of these positions because of the influential atmosphere which surrounds him."[9]

The third report favorably reported a bill—S. 514—proposing a reorganization of the RFC.[10] On February 19, 1951, the President submitted to Congress an executive reorganization plan which also proposed to reorganize the Reconstruction Finance Corporation. As a result the passage of S. 514 was rendered unlikely, at best. On February 21, 1951, the Subcommittee on the Reconstruction Finance Corporation re-commenced its hearings. The chairman stated, at that time, that the purpose of the hearings would be to clarify the third interim report, to rebut criticism of it, to develop evidence in its support, and to afford persons mentioned in it an opportunity to reply.[11] It was at this set of hearings that the testimony in question was given.

Appellant argues here that the Subcommittee's purpose was one of "ventilation" and that this is not a valid legislative purpose. He points to the chairman's remarks and the fact that S. 514 had been, in effect, superseded by the President's reorganization plan. There is no merit in this argument. Certainly a committee can hold hearings to substantiate an earlier report, where the bill reported is pending before Congress. Here, to be sure, S. 514 appeared doubtful of passage, in view of the presidential reorganization plan. But the report was also pertinent to that plan. And at the time of the hearings in question the plan was before Congress for its acceptance or rejection.[12] It was entitled to know whether or not the report of the Subcommittee was subject to refutation.

---

5. Appellant does not claim prejudice. The result here might be different if he had claimed and proved it. Agnew v. United States, 1897, 165 U.S. 36, 17 S.Ct. 235, 41 L.Ed. 624; Romney v. United States, 83 U.S.App.D.C. 150, 167 F.2d 521, certiorari denied, 1948, 334 U.S. 847, 68 S.Ct. 1512, 92 L.Ed. 1771. Of course, in a case such as Ballard, where a cohesive class is excluded, prejudice to the accused need not be shown. 329 U.S. 187, at page 195, 67 S.Ct. 261.

6. Sen.Res.No. 219. 81st Cong., 2d Sess. (1950).

7. Sen.Rep.No. 76, 82nd Cong., 1st Sess. (1951).

8. Id. at 3.

9. Id. at 6.

10. S. 514, 82nd Cong., 1st Sess. (1951).

11. Hearings on the Reconstruction Finance Corporation before Subcommittee of Senate Banking and Currency Committee, 82nd Cong., 1st Sess. 595–96 (1951).

12. A presidential reorganization plan may be rejected by Congress within 60 days of its submission. If not rejected in this period it becomes law. 5 U.S.C.A. § 133z–4. The instant plan was submitted on February 19, 1951. The hearing in question occurred on February 21, 1951.

■ The clearly valid legislative purpose which thus underlay these hearings was not vitiated by the incidental desire of the Subcommittee to give interested parties a chance to reply to statements made in the third report. That desire was fair and reasonable. The mere "ventilation" of sensational facts, of a sort not conceivably linked or linkable to valid congressional legislation, has been the target of much criticism.[13] But nothing of that kind is present here.

Appellant next alleges that the District Court erred in denying a motion for acquittal. He urges that the evidence is insufficient on all counts. We briefly summarize the evidence as to the first count, to which this opinion is limited.

Count I charges appellant with perjuriously testifying: "While I was employed by the Reconstruction Finance Corporation I never had anything to do with the loan applications made by Lustron." This representation was contained in a prepared statement read by appellant at the hearing of February 21, 1951.

The Lustron Corporation first applied for a loan in 1947. Appellant was then a loan examiner in the RFC. It is conceded that he had nothing to do with the application for this loan. He did, however, "service" the loan after it was granted.[14] In June of 1948 Lustron applied for an additional loan of $10,000,-000. It is this second application with which appellant was found to have been connected. The primary evidence connecting him with it is a document of the Reconstruction Finance Corporation review committee recommending the loan.

In the lower left hand corner of the last page of this document, underneath the word "concur," is appellant's signature. Hubert Steele, a former loan examiner at the Reconstruction Finance Corporation, testified that it was usual for an examiner who was servicing a loan to make a recommendation on any additional loan requested by that borrower. Harvey J. Gunderson, a Director of the Reconstruction Finance Corporation at the time, testified that when the review committee's recommendation came before the Directors they sent it back for appellant's signature. He implied that this was because appellant was servicing the original Lustron loan. Appellant testified that he signed the document because he was servicing the original loan and because he received a memorandum from the head of his division asking him to do so. (It read: "Please sign and return.") He denied that he made an official recommendation and said that he was not qualified to write a report on so large a loan. He further testified: "As far as trying to show that me quitting RFC on the same day as the Lustron loan was approved, that has no significance whatsoever." The offer of employment from Lustron came, he said, some two or three weeks earlier.

■ Such, in brief, was the evidence on the first count. To return a verdict of guilty on a charge of perjury a jury must, of course, be convinced, beyond a reasonable doubt, not only that the accused testified falsely but that he did not, at the time, believe his testimony to be true.[15] The first inquiry in a de-

13. See Fay, Trends in Judicial Relief for Legislative Witnesses, 29 Notre Dame Lawyer, 225, 227 (1954); cf. Wyzanski, Standards for Congressional Investigations, 3 N. Y. Bar Ass'n Record 93 (1948).

14. Acting on a loan application at the RFC, it appeared from the testimony, involved granting or recommending a grant, or working on the application for the grant, of a loan. "Servicing" involved working on a loan which had already been granted. It included such tasks as check-

ing to see that the borrower complied with the conditions of the loan, and passing on requests for disbursements under the loan. After the loan was granted the money was ordinarily parceled out as needed or requested rather than all at once.

15. The false testimony, of course, must also be material: the statute makes that an element of the crime. D.C.Code 1951, Tit. 22, § 2501; Pyle v. United States, 1946, 81 U.S.App.D.C. 209, 156 F.2d 852. The appellant does not claim that his tes-

termination of whether or not the evidence was sufficient for the jury to find an accused guilty of perjury relates to the application of the "two witness rule." This rule is misnamed. It does not require the testimony of two witnesses. Properly stated it is that "the uncorroborated oath of one witness is not enough to establish, for purposes of conviction of perjury, the falsity of sworn testimony." Maragon v. United States, 1950, 87 U.S.App.D.C. 349, 350, 187 F.2d 79, 80, certiorari denied, 1951, 341 U.S. 932, 71 S.Ct. 804, 95 L.Ed. 1361. See Hammer v. United States, 1926, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118; Weiler v. United States, 1945, 323 U.S. 606, 65 S. Ct. 548, 89 L.Ed. 495. Defendant's admissions and documentary evidence go toward its fulfillment. Maragon v. United States, supra. We think the evidence offered on the first count satisfies the rule.

 Fulfillment of the two witness rule is necessary for conviction of perjury. It is not, however, sufficient for conviction. An additional requirement is that the jury could reasonably believe that there was no reasonable doubt as to defendant's guilt. Curley v. United States, 81 U.S.App.D.C. 389, 160 F.2d 229, certiorari denied, 1947, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850. This requirement, of course, relates to both elements of perjury: the falsity of the testimony and the lack of a belief in its truth. Generally, a belief as to the falsity of testimony may be inferred by the jury from proof of the falsity itself.[16] In some cases perhaps this might not be so —as where the testimony concerned a triviality or an occurrence of long before. See Fotie v. United States, 8 Cir., 1943, 137 F.2d 831. We do not think

any such situation exists here. Of course, the jury could have found that there was a reasonable doubt that appellant believed his testimony on which the first count is based to be inaccurate. But we also think that the jury could reasonably find, and did find as to that count, that there was no reasonable doubt as to appellant's guilt.

Finally, appellant complains of several of the questions asked and remarks made at the trial by the prosecutor. We have studied the record as to these incidents. We do not believe they warrant a new trial, and hence do not deem it necessary to detail them here.

For these reasons, the judgment of the District Court must be

Affirmed.

---

timony on the first count was not material, except to say that "Testimony given before a committee whose hearings are not serving a legislative purpose, would not be material or pertinent," Br. 28, citing Kilbourn v. Thompson, 1880, 103 U. S. 168, 26 L.Ed. 377; McGrain v. Daugherty, 1927, 273 U.S. 135, 47 S.Ct. 319, 71 L.Ed. 580, and Rumely v. United States, 1952, 90 U.S.App.D.C. 382, 393, 197 F.2d

166, 177, affirmed 1953, 345 U.S. 41, 73 S. Ct. 543, 97 L.Ed. 770. We have concluded, supra, that the hearings here were serving a proper legislative purpose.

16. See United States v. Hiss, 2 Cir., 1950, 185 F.2d 822; United States v. Remington, 2 Cir., 1951, 191 F.2d 246; 51 Col.L. Rev. 1056 (1951), 65 Harv.L.Rev. 520 (1952).