# CARROLL ET AL. v. UNITED STATES.

No. 571.  Argued April 4, 1957.—Decided June 24, 1957.

*Curtis P. Mitchell* argued the cause for petitioners. With him on the brief were *Henry Lincoln Johnson, Jr.* and *William B. Bryant.*

*Harold H. Greene* argued the cause for the United States. With him on the brief were *Solicitor General Rankin* and *Assistant Attorney General Olney.*

Mr. Chief Justice Warren delivered the opinion of the Court.

Petitioners were arrested in February 1954 on John Doe warrants and subsequently were indicted in the United States District Court for the District of Columbia, with two others, for violations of the local lottery laws and for conspiracy to carry on a lottery.[1] After indictment each filed a pre-trial motion under Rule 41 (e) of the Federal Rules of Criminal Procedure,[2] asking for the suppression of evidence seized from his person at the time of his arrest. The District Court granted petitioners' motions to suppress, on the ground that probable cause had been lacking for the issuance of the arrest warrants directed against them.[3] 126 F. Supp. 620. The Government

---

[1] Petitioners were charged with carrying on a lottery known as the "numbers game," a violation of D. C. Code, 1951, § 22–1501; with knowing possession of lottery slips, a violation of § 22–1502; and with conspiracy to carry on a lottery, a violation of 18 U. S. C. § 371. Since the substantive offense of carrying on a lottery was a felony under § 22–1501, the conspiracy charge was also a felony, by the terms of 18 U. S. C. § 371.

[2] Fed. Rules Crim. Proc., 41:
"(e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained on the ground that . . . (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued, . . . . If the motion is granted the property shall be restored unless otherwise subject to lawful detention and it shall not be admissible in evidence at any hearing or trial. . . ."

[3] Petitioners' individual motions were each captioned "Motion to Suppress 'Arrest Warrant'" and asked only for suppression of the evidence taken from the person at the arrest. The District Court also granted in part a motion, made on behalf of all the defendants, relating to the seizure of evidence under search warrants at two homes. The Government makes some point of characterizing this as a motion for the *return* of property. It was captioned "Motion to Suppress Evidence and Return Property," but the body of the

appealed the order for suppression to the United States Court of Appeals for the District of Columbia Circuit. The indictment against petitioners had not been dismissed, but the Government informed the Court of Appeals that, without the "numbers" paraphernalia seized and suppressed, it would lack sufficient evidence to proceed on any of the counts involving petitioners and therefore would have to dismiss the indictment. Petitioners challenged the jurisdiction of the Court of Appeals to hear an appeal by the Government from an order of the District Court granting a motion to suppress that was made while an indictment was pending in the same District Court. The Court of Appeals sustained its jurisdiction on the authority of its prior decision in *United States* v. *Cefaratti*,[4] and reversed the district judge on the merits, holding that there had been probable cause to justify the issuance of warrants for the arrest of petitioners. 98 U. S. App. D. C. 244, 234 F. 2d 679. We granted certiorari, limited to the question of appealability of the suppression order, because of the importance of that question to the administration of the federal criminal laws. 352 U. S. 906.

The Government contends, most broadly, that the suppression order of any District Court is "final" and sufficiently separable and collateral to the criminal case to be appealable under the general authority of 28 U. S. C. § 1291, notwithstanding that such an order is not listed

motion asked only that the evidence seized at those places be suppressed. We find it unnecessary to decide whether this was a motion "for return of property," or whether that would make a difference in the question of appealability on these facts, for the Court of Appeals, when it reached the merits of the issue of probable cause, dealt only with the warrants for the arrest of petitioners. Hence we limit our consideration of the case to that aspect of the District Court's order for suppression.

[4] 91 U. S. App. D. C. 297, 202 F. 2d 13, as explained in *United States* v. *Stephenson*, 96 U. S. App. D. C. 44, 45, 223 F. 2d 336, 337.

398

among the few types of orders in criminal cases from which the Government may appeal pursuant to 18 U. S. C. § 3731.[5]  More narrowly, failing acceptance of the posi-

[5] 28 U. S. C. § 1291:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts . . . except where a direct review may be had in the Supreme Court."

18 U. S. C. § 3731:

"An appeal may be taken by and on behalf of the United States from the district courts direct to the Supreme Court of the United States in all criminal cases in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof, where such decision or judgment is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

"From a decision arresting a judgment of conviction for insufficiency of the indictment or information, where such decision is based upon the invalidity or construction of the statute upon which the indictment or information is founded.

"From the decision or judgment sustaining a motion in bar, when the defendant has not been put in jeopardy.

"An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:

"From a decision or judgment setting aside, or dismissing any indictment or information, or any count thereof except where a direct appeal to the Supreme Court of the United States is provided by this section.

"From a decision arresting a judgment of conviction except where a direct appeal to the Supreme Court of the United States is provided by this section.

"The appeal in all such cases shall be taken within thirty days after the decision or judgment has been rendered and shall be diligently prosecuted.

"Pending the prosecution and determination of the appeal in the foregoing instances, the defendant shall be admitted to bail on his own recognizance. . . ."

The references in the above statutes to "courts of appeals" and "district courts" encompass the United States Court of Appeals for the District of Columbia Circuit and the United States District Court for the District of Columbia.  28 U. S. C. §§ 43, 132, 451; 62 Stat. 991, as amended, 63 Stat. 107.  See also 56 Stat. 271.

tion just stated, the Government maintains that an order of suppression is, within the criminal case, a "final" order and thus appealable under the statutory provisions for appeals by the Government in criminal cases that are applicable exclusively in the District of Columbia.[6] It will be convenient to discuss the issues in the same order.

## I.

It is axiomatic, as a matter of history as well as doctrine, that the existence of appellate jurisdiction in a specific federal court over a given type of case is dependent upon authority expressly conferred by statute. And since the jurisdictional statutes prevailing at any given time are so much a product of the whole history of both growth and limitation of federal-court jurisdiction since the First Judiciary Act, 1 Stat. 73, they have always been interpreted in the light of that history and of the axiom that clear statutory mandate must exist to found jurisdiction. It suffices to cite as authority for these principles some of the cases in which they have been applied to the general problem now before us, the availability of appellate review sought by the Government in criminal cases. *E. g., United States* v. *More,* 3 Cranch 159; *United States* v. *Sanges,* 144 U. S. 310; *In re Heath,* 144

---

[6] D. C. Code, 1951, § 23–105:

"In all criminal prosecutions the United States . . . shall have the same right of appeal that is given to the defendant, including the right to a bill of exceptions: *Provided,* That if on such appeal it shall be found that there was error in the rulings of the court during a trial, a verdict in favor of the defendant shall not be set aside."

D. C. Code, 1951, § 17–102:

"Nothing contained in any Act of Congress shall be construed to empower the United States Court of Appeals for the District of Columbia to allow an appeal from any interlocutory order entered in any criminal action or proceeding or to entertain any such appeal heretofore or hereafter allowed or taken."

U. S. 92; *Cross* v. *United States,* 145 U. S. 571; *United States* v. *Burroughs,* 289 U. S. 159.[7]

There is a further principle, also supported by the history of federal appellate jurisdiction, that importantly pertains to the present problem. That is the concept that in the federal jurisprudence, at least,[8] appeals by the Government in criminal cases are something unusual, exceptional, not favored. The history shows resistance of the Court to the opening of an appellate route for the Government until it was plainly provided by the Congress, and after that a close restriction of its uses to those authorized by the statute. Indeed, it was 100 years before the *defendant* in a criminal case, even a capital case, was afforded appellate review as of right.[9] And

---

[7] See also *Cobbledick* v. *United States,* 309 U. S. 323; *Baltimore Contractors, Inc.* v. *Bodinger,* 348 U. S. 176, 178–182.

[8] As to the development in state law of statutes in derogation of the common-law principle against appeal by the prosecution, see *United States* v. *Sanges,* 144 U. S. 310, 312–318; S. Rep. No. 5650, 59th Cong., 2d Sess.; H. R. Rep. No. 45, 77th Cong., 1st Sess. 2–3. See also *Palko* v. *Connecticut,* 302 U. S. 319.

[9] The Act of February 6, 1889, 25 Stat. 656, authorized direct review in the Supreme Court by writ of error "in all cases of conviction of crime the punishment of which provided by law is death, tried before any court of the United States . . . ." Two years later the Circuit Courts of Appeals Act extended the jurisdiction for direct review to all "cases of conviction of a capital or otherwise infamous crime." 26 Stat. 827. The burden upon this Court of hearing the large number of criminal cases led, in 1897, to transfer of the jurisdiction over convictions in noncapital cases to the Circuit Courts of Appeals. 29 Stat. 492. Section 238 of the Judicial Code completed the retrenchment in 1911 by eliminating direct review of capital cases. 36 Stat. 1157. See Frankfurter and Landis, The Business of the Supreme Court (1928), 109–113.

Prior to the Acts of 1889 and 1891, there was no jurisdictional provision for appeal or writ of error in criminal cases. *United States* v. *More,* 3 Cranch 159; see *United States* v. *Sanges,* 144 U. S. 310, 319. A question of law arising in a case tried by a Circuit Court of two judges, if they disagreed on the question, could be brought

after review on behalf of convicted defendants was made certain by the Acts of 1889 and 1891, the Court continued to withhold an equivalent remedy from the Government, despite the existence of colorable statutory authority for permitting the Government to appeal in those important cases where a prosecution was dismissed upon the trial court's opinion of the proper construction or the constitutional validity of a federal statute.[10]   When the Congress responded to the problem of such cases, in the Criminal Appeals Act of 1907, now 18 U. S. C. § 3731,

here upon a certificate of division of opinion, at the request of either party, and (except during one two-year period) without awaiting the final outcome of the case in the Circuit Court. 2 Stat. 159; 17 Stat. 196; R. S. § 651. See *United States* v. *Sanges, supra,* at 320–321. The availability of this procedure for review, haphazard at best because dependent on disagreement between the two sitting judges, came to be very much diluted by the increasing frequency with which the Circuit Courts were conducted by a single judge. See Frankfurter and Landis, 79, 109.

[10] The Act of 1891 included as a category of cases subject to direct review by this Court, "any case in which the constitutionality of any law of the United States . . . is drawn in question." 26 Stat. 828. But in *United States* v. *Sanges, supra,* the Court related the history of repeated rejections of Government criminal appeals, noted that the Act expressly conferred appellate jurisdiction in "cases of conviction," and held that the Act did not sufficiently demonstrate congressional intent to have criminal cases reviewed at the behest of the Government, either in this Court or in the Circuit Courts of Appeals. The Court said: "It is impossible to presume an intention on the part of Congress to make so serious and far-reaching an innovation in the criminal jurisprudence of the United States." 144 U. S., at 323.

Similarly, after review of noncapital convictions was again committed to the Circuit Courts of Appeals in 1897, it was held that upon a reversal of a conviction by that court, the Government could not bring the case here through the certiorari jurisdiction that had also been created by the Act of 1891. *United States* v. *Dickinson,* 213 U. S. 92. Section 240 of the Judicial Code later conferred this jurisdiction explicitly. 36 Stat. 1157.

it did so with careful expression of the limited types of orders in criminal cases as to which the Government might thenceforth have review.[11]  It was as late as 1942 before the Criminal Appeals Act was amended to permit appeals by the Government from decisions, granting dismissal or arrest of judgment, other than those grounded

---

[11] The 1907 enactment, 34 Stat. 1246, authorized direct review in this Court by writ of error in the same three classes of cases, roughly speaking, as are listed in the first four paragraphs of the present 18 U. S. C. § 3731, quoted in note 5, *supra*.  The original Act also included the provisions protective of the defendant in the last two paragraphs quoted there, relating to expedition of the Government appeal and bail on his own recognizance, and the original Act had additional cautionary provisions, commanding precedence for these cases and barring the writ of error "in any case where there has been a verdict in favor of the defendant."

The legislative history emphasizes the awareness of the Congress that Government appeals in criminal cases were a sharp innovation and congressional concern that such jurisdiction should go no farther at that time than the immediate problem of affording review for trial court opinions as to the construction or validity of federal statutes.  In brief, the development of the Criminal Appeals Act was this: The House bill proposed adoption of the language of the District of Columbia Code of 1901, which had given the Government "the same right of appeal that is given to the defendant . . . ." (Quoted, note 6, *supra*, and discussed later in this opinion.)  The Senate Committee on the Judiciary substituted a more specifically drawn measure, dividing the jurisdiction between this Court and the Circuit Court of Appeals along the line the 1891 Act had drawn for civil cases.  After lengthy floor debate, in which various objections to the measure were put forth, it was amended on the floor by narrowing the classes of cases in which the Government could seek review, by limiting the jurisdiction to direct review here, and by adding the protective provisions noted above.  The House accepted the Senate product.  See H. R. Rep. No. 2119, 59th Cong., 1st Sess.; S. Rep. No. 3922, 59th Cong., 1st Sess.; S. Rep. No. 5650, 59th Cong., 2d Sess.; H. R. Conf. Rep. No. 8113, 59th Cong., 2d Sess.; 40 Cong. Rec. 8695, 9032–9033; 41 Cong. Rec. 2190–2197, 2745–2763, 2818–2825, 3044–3047.  See also Frankfurter and Landis, 114–119.

by the trial court upon the construction or invalidity of a statute.[12]

It is true that certain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U. S. C. § 1291 without regard to the limitations of 18 U. S. C. § 3731, just as in civil litigation orders of equivalent distinctness are appealable on the same authority without regard to the limitations of 28 U. S. C. § 1292.[13] The instances in criminal cases are very few. The only decision of this Court applying to a criminal case the reasoning of *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541, held that an order relating to the amount of bail to be exacted falls into this category. *Stack* v. *Boyle,* 342 U. S. 1. Earlier cases illustrated, sometimes without discussion, that under certain conditions orders for the suppression or return of illegally seized property are appealable at once, as where the motion is made *prior to indictment*,[14] or in a *different district* from that in which the trial will occur,[15] or *after dismissal* of the

---

[12] 56 Stat. 271. See H. R. Rep. No. 45, 77th Cong., 1st Sess. In these new categories of cases the appeal was directed to the Court of Appeals. The present version of the added language is quoted, as the fifth through seventh paragraphs of 18 U. S. C. § 3731, in note 5, *supra.*

[13] *Cohen* v. *Beneficial Loan Corp.*, 337 U. S. 541, 545–547; *Swift & Co.* v. *Compania Caribe,* 339 U. S. 684, 688–689; and cases cited.

[14] *E. g., Perlman* v. *United States,* 247 U. S. 7; *Go-Bart Importing Co.* v. *United States,* 282 U. S. 344.

[15] Cf. *Dier* v. *Banton,* 262 U. S. 147. Rule 41 (e) explicitly authorizes making the motion in a different district:
"A person aggrieved by an unlawful search and seizure may move the district court for the district in which the property was seized for the return of the property and to suppress for use as evidence anything so obtained . . . . The motion to suppress evidence may also be made in the district where the trial is to be had. . . ."

case,[16] or perhaps where the emphasis is on the *return of property* rather than its suppression as evidence.[17] In such cases, as appropriate, the Government as well as the moving person has been permitted to appeal from an adverse decision. *Burdeau* v. *McDowell,* 256 U. S. 465.

But a motion made by a defendant after indictment and in the district of trial has none of the aspects of independence just noted, as the Court held in *Cogen* v. *United States,* 278 U. S. 221. As the opinion by Mr. Justice Brandeis explains, the denial of a pre-trial motion in this posture is interlocutory in form and real effect, and thus not appealable at the instance of the defendant. We think the granting of such a motion also has an interlocutory character, and therefore cannot be the subject of an appeal by the Government. In the present case the

---

[16] *E. g., Dickhart* v. *United States,* 57 App. D. C. 5, 16 F. 2d 345. That was a motion, after acquittal in a case under the National Prohibition Act, 41 Stat. 305, to regain possession of liquor that had been seized. See also note 17, *infra.*

[17] *E. g., Steele* v. *United States No. 1,* 267 U. S. 498; *United States* v. *Kirschenblatt,* 16 F. 2d 202; cf. also *Steele* v. *United States No. 2,* 267 U. S. 505; *Dowling* v. *Collins,* 10 F. 2d 62. We do not suggest that a motion made under Rule 41 (e) gains or loses appealability simply upon whether it asks return or suppression or both. The cases just cited arose under the National Prohibition Act, which provided an independent proceeding to secure the return of property seized under a search warrant that had been issued wrongfully. 41 Stat. 315, adopting 40 Stat. 228. That factor underlay the discussion of this category of orders as appealable in *Cogen* v. *United States,* 278 U. S. 221, 225–227. The "essential character and the circumstances under which it is made" determine whether a motion is an independent proceeding or merely a step in the criminal case. *Id.,* at 225; cf. *United States* v. *Wallace & Tiernan Co.,* 336 U. S. 793, 801–803.

We think that a contemporary illustration of this category is *United States* v. *Ponder,* 238 F. 2d 825, where the suppression order related to a plenary proceeding that had been brought in order to impound election records for investigation by the Department of Justice and the grand jury.

Government argues, as it offered to stipulate below, that the effect of suppressing the evidence seized from petitioners at their arrests will be to force dismissal of the indictment for lack of evidence on which to go forward. But that is not a necessary result of a suppression order relating to particular items of evidence, nor have we been shown whether it will be the result in practice in the generality of cases. Appeal rights cannot depend on the facts of a particular case. The Congress necessarily has had to draw the jurisdictional statutes in terms of categories. To fit an order granting suppression before trial in a criminal case into the category of "final decisions" requires a straining that is not permissible in the light of the principles and the history concerning criminal appeals, especially Government appeals, that are outlined above and more fully set forth in the cases cited.[18] Other Courts of Appeals that have considered the problem have concluded that this order is not "final" or appealable at the behest of the Government.[19]

---

[18] See especially *United States* v. *Sanges,* 144 U. S. 310; *Cross* v. *United States,* 145 U. S. 571; cf. *Kepner* v. *United States,* 195 U. S. 100, 124–134.

[19] *United States* v. *Rosenwasser,* 145 F. 2d 1015 (C. A. 9th Cir.); cf. *United States* v. *Janitz,* 161 F. 2d 19 (C. A. 3d Cir.) (order made at trial); *United States* v. *Williams,* 227 F. 2d 149 (C. A. 4th Cir.) (motion made before indictment); see *United States* v. *One 1946 Plymouth Sedan,* 167 F. 2d 3, 8–9 (C. A. 7th Cir.). The court below has held a pre-trial order suppressing wiretap evidence to be interlocutory, distinguishing its ruling in the *Cefaratti* case on the basis that the prohibition of Rule 41 (e) against reviving the issue of admissibility at the trial does not apply to wiretap evidence. *United States* v. *Stephenson,* 96 U. S. App. D. C. 44, 223 F. 2d 336. We express no opinion as to this distinction, in view of our disposition of the present case.

An appeal by the United States was treated on the merits without discussion of appealability, where the move for return of papers was made after indictment, in *United States* v. *Kirschenblatt,* 16 F. 2d 202 (C. A. 2d Cir.). That proceeding had elements of independent

The Government exhorts us not to exalt form over substance, in contending that the present order has virtually the same attributes as the suppression orders found reviewable in earlier cases. We do not agree that the order entered in a pending criminal case has the same characteristics of independence and completeness as a suppression order entered under other circumstances. Moreover, in a limited sense, form *is* substance with respect to ascertaining the existence of appellate jurisdiction. While it is always necessary to categorize a situation realistically, to place a given order according to its real effect, it remains true that the categories themselves were defined by the Congress in terms of form. Many interlocutory decisions of a trial court may be of grave importance to a litigant, yet are not amenable to appeal at the time entered, and some are never satisfactorily reviewable. In particular is this true of the Government in a criminal case, for there is no authority today for interlocutory appeals,[20] and even if the Government had a general right to review upon an adverse conclusion of a case after trial, much of what it might complain of would have been swallowed up in the sanctity of the jury's verdict.[21]

---

character because of its statutory context under the National Prohibition Act. Likewise, *United States* v. *Ponder*, 238 F. 2d 825 (C. A. 4th Cir.), which has some broad language favoring appealability for the Government, on its facts was seen by the court as a proceeding independent of the pending criminal case. See note 17, *supra*.

[20] For an earlier technique, see note 9, *supra*.

[21] See *United States* v. *Ball*, 163 U. S. 662, 671; *Kepner* v. *United States*, 195 U. S. 100, 124–134.

Under the District of Columbia Code of 1901, to be discussed later in this opinion, the Government was granted "the same right of appeal that is given to the defendant, . . . *Provided*, That if on such appeal it shall be found that there was error in the rulings of the court during the trial, a verdict in favor of the defendant shall

If there is serious need for appeals by the Government from suppression orders, or unfairness to the interests of effective criminal law enforcement in the distinctions we have referred to, it is the function of the Congress to decide whether to initiate a departure from the historical pattern of restricted appellate jurisdiction in criminal cases.[22]  We must decide the case on the statutes that

---

not be set aside." 31 Stat. 1341. It was soon held that the effect of the proviso was to preclude entirely the taking of an appeal by the Government after a verdict for the defendant. *United States* v. *Evans,* 30 App. D. C. 58, approved, 213 U. S. 297; see *United States* v. *Martin,* 81 A. 2d 651, 652–653 (Mun. Ct. App.).

[22] In the Narcotic Control Act of 1956, the Congress enacted the following provision in a new chapter being added to Title 18 of the U. S. Code (Supp. IV, 1957):

"§ 1404. Motion to suppress—appeal by the United States

"In addition to any other right to appeal, the United States shall have the right to appeal from an order granting a motion for the return of seized property and to suppress evidence made before the trial of a person charged with a violation of—

[designated narcotics offenses]

"This section shall not apply with respect to any such motion unless the United States attorney shall certify, to the judge granting such motion, that the appeal is not taken for purposes of delay. Any appeal under this section shall be taken within 30 days after the date the order was entered and shall be diligently prosecuted." 70 Stat. 573.

The legislative history shows that the Department of Justice expressed a preference for the passage of other bills, which had been introduced to amend 18 U. S. C. § 3731 so as to authorize Government appeals from suppression orders in all federal prosecutions, and without the qualification requiring certification by the United States Attorney. See S. Rep. No. 1997, 84th Cong., 2d Sess. 19. The need for the enactment of the more limited measure was stated by the respective committees, which were aware of some of the prior court decisions, including those of the District of Columbia Circuit in *Cefaratti* and the instant case. See *id.,* at 11, 15, 26; S. Rep. No. 2033, 84th Cong., 2d Sess. 16–19, 28; H. R. Rep. No. 2388, 84th

408

exist today, in the light of what has been the development of the jurisdiction.   It is only through legislative resolution, furthermore, that peripheral questions regarding the conduct of government appeals in this situation can be regulated.   Some of the problems directed at legislative judgment involve such particulars as confinement or bail of the defendant, acceleration of the Government's appeal, and discretionary limitation of the right to take the appeal.[23]

## II.

The Court of Appeals sustained its jurisdiction on the basis of statutory provisions peculiar to the District of Columbia.   Here again, the jurisdictional statutes are a product of historical development, and must be interpreted in that light.   During the century from 1801 to 1901 the Congress several times organized and reorganized the courts of the District of Columbia, independently of the federal courts in the States.   It is not necessary here to relate the chronology of shuffled jurisdictions and

Cong., 2d Sess. 5; Hearing before the Subcommittee on Improvements in the Federal Criminal Code of the Senate Committee on the Judiciary on S. 3760, 84th Cong., 2d Sess. 7–11, 38–43.

The more general bills referred to by the Department of Justice were S. 3423 and H. R. 9364, of the 84th Congress.   In the current session of the 85th Congress, a bill to the same effect, H. R. 263, has been introduced.

[23] Thus, the Criminal Appeals Act has provided for bail on the defendant's own recognizance, and the bills listed in note 22, *supra*, would extend that provision to defendants pending Government appeals from suppression orders, while the appeal section enacted in the Narcotic Control Act of 1956 does not refer to bail.   Both Acts and the bills have the same acceleration provision, albeit the 30-day period was much more of a speed-up when the Criminal Appeals Act was drawn in 1907 than it is today.   Cf. Fed. Rules Crim. Proc., 37 (a)(2); 28 U. S. C. § 2107.   Only the Narcotic Control Act requires an express certification that the government appeal is not taken for purposes of delay.

nomenclature.[24]   It is sufficient to note that from 1838 on, review of a final judgment of conviction in the criminal trial court was available in the appellate tribunal of the District.[25]   However, the appellate judgment was not further reviewable in this Court in any manner during this period. *In re Heath,* 144 U. S. 92; *Cross* v. *United States,* 145 U. S. 571.   When the Acts of 1889 and 1891 opened up appellate review of criminal convictions in the federal courts throughout the country, at first directly to this Court, it was held that those statutes did not apply to cases originating in the District of Columbia.   *Ibid.*

In 1901 the Congress codified the laws of the District of Columbia, including those relating to the judicial system.   District of Columbia Code, 31 Stat. 1189. Criminal jurisdiction was vested in the trial court of general jurisdiction, then known as the Supreme Court of the District of Columbia.[26]   A single section of the statute, § 226, conferred appellate jurisdiction on the Court of Appeals over decisions of the Supreme Court in general terms, apparently including criminal decisions. A party aggrieved could take an appeal from a final order or judgment, and was entitled to allowance of an appeal from an interlocutory order affecting possession of property.   In addition, the Court of Appeals could allow an

---

[24] See *Ex parte Bradley,* 7 Wall. 364, 366–368; Frankfurter and Landis, 120–124.

[25] 5 Stat. 307; Dist. Col. R. S. § 845.

[26] 31 Stat. 1202.   There was also a Police Court, given concurrent jurisdiction over misdemeanors, which now is known as the criminal branch of the Municipal Court.   31 Stat. 1196; D. C. Code, 1951, § 11–755.   In order to simplify the discussion, we shall not refer in this opinion to the appellate jurisdiction that has existed, in changing forms, from the decisions of this inferior court.   See D. C. Code, 1951, §§ 11–772, 11–773; *United States* v. *Martin,* 81 A. 2d 651 (Mun. Ct. App.) ; *United States* v. *Basiliko,* 35 A. 2d 185 (Mun. Ct. App.).

appeal, in its discretion, from any other interlocutory order when it was shown "that it will be in the interest of justice to allow such appeal." [27]

Section 935 of the Code of 1901 established this new provision:

> "In all criminal prosecutions the United States or the District of Columbia, as the case may be, shall have the same right of appeal that is given to the defendant, including the right to a bill of exceptions: *Provided,* That if on such appeal it shall be found that there was error in the rulings of the court during the trial, a verdict in favor of the defendant shall not be set aside." 31 Stat. 1341.

The legislative history of the Code does not indicate why the Government was now given a right of appeal, but we may surmise that the draftsmen of the Code desired to adopt a procedural technique that was then in force in a large number of States.[28] The "same right of appeal that is given to the defendant" would be defined by reference to § 226, of course, in cases coming up from the Supreme Court. After the Congress conferred on the United

---

[27] 31 Stat. 1225. The relevant text of § 226 was:
"Any party aggrieved by any final order, judgment, or decree of the supreme court of the District of Columbia . . . may appeal therefrom to the said court of appeals; . . . . Appeals shall also be allowed to said court of appeals from all interlocutory orders of the supreme court of the District of Columbia . . . whereby the possession of property is changed or affected, such as orders for the appointment of receivers, granting injunctions, dissolving writs of attachment, and the like; and also from any other interlocutory order, in the discretion of the said court of appeals, whenever it is made to appear to said court upon petition that it will be in the interest of justice to allow such appeal."

[28] A list of state provisions was submitted to the Congress in 1907 in connection with the Criminal Appeals Act. See S. Rep. No. 5650, 59th Cong., 2d Sess. Also see *United States* v. *Sanges,* 144 U. S. 310, 312–318.

States a more limited right of appeal from the District Courts in the Criminal Appeals Act of 1907, running directly to this Court, it was held that the 1907 Act was not applicable to cases decided in the Supreme Court of the District of Columbia. There § 935 provided "the complete appellate system." *United States* v. *Burroughs,* 289 U. S. 159, 164. When the Criminal Appeals Act was broadened in 1942, it was then first made applicable to the District of Columbia.[29] But the text of § 935 was not repealed at that time, nor was it repealed in connection with the 1948 revisions of the Judicial Code and the Criminal Code.[30] It may be concluded, then, that even today criminal appeals by the Government in the District of Columbia are not limited to the categories set forth in 18 U. S. C. § 3731, although as to cases of the type covered by that special jurisdictional statute, its explicit directions will prevail over the general terms of § 935, now found in the District of Columbia Code, 1951 Edition, as § 23–105. *United States* v. *Hoffman,* 82 U. S. App. D. C. 153, 161 F. 2d 881, decided on merits, 335 U. S. 77.

Meanwhile, under the general provisions of § 226 of the 1901 Code, the practice had developed of allowing appeals from interlocutory orders in criminal cases. A particular instance disturbed the Congress in 1926, and it immediately passed a statute to eliminate the practice. It is apparent from the legislative history that it was interlocutory appeals for the *defendant* that were considered anomalous in a federal court and undesirable from the viewpoint of prompt dispatch of criminal prosecutions,[31] but the new provision in terms applied equally to the possibility of an interlocutory appeal being allowed

[29] 56 Stat. 271.

[30] 62 Stat. 862, 992; 63 Stat. 110.

[31] See S. Rep. No. 926, 69th Cong., 1st Sess.; H. R. Rep. No. 1363, 69th Cong., 1st Sess.; 67 Cong. Rec. 9968.

to the Government through the combined provisions of § 226 and § 935. The 1926 enactment, as it now reads in the District of Columbia Code, 1951 Edition, § 17–102, states:

> "Nothing contained in any Act of Congress shall be construed to empower the United States Court of Appeals for the District of Columbia to allow an appeal from any interlocutory order entered in any criminal action or proceeding or to entertain any such appeal heretofore or hereafter allowed or taken." 44 Stat. 831, as amended, 48 Stat. 926.

The allowance of appeal technique no longer exists as to cases coming from the District Court (the former Supreme Court), but if this section does not continue to have life by force of the words "or hereafter . . . taken," it does not matter, for § 226 itself was replaced in 1949 [32] by the nationwide appellate jurisdiction provisions of Title 28 of the U. S. Code, § 1291 and § 1292, which do not authorize interlocutory appeals in criminal cases.

Thus the statutory context in which the court below made its ruling is seen to be this: Subject to stated limitations, the Government has the "same right of appeal" as the defendant in criminal cases in the District Court for the District of Columbia, but no party can appeal an interlocutory order in such cases. In *United States* v. *Cefaratti*, 91 U. S. App. D. C. 297, 202 F. 2d 13, the Court of Appeals reconciled these rules by holding:

> "Since defendants may appeal from 'final decisions,' to say that 'the United States . . . shall have the same right of appeal that is given to the defendant . . .' means that . . . the United States may appeal from final decisions. It does not mean that the United States cannot appeal from a final deci-

---

[32] 63 Stat. 110.

sion unless it so happens that an opposite decision would also have been final." 91 U. S. App. D. C., at 302, 202 F. 2d, at 17.

Applying this reasoning to orders for the suppression of evidence, the Court of Appeals concluded that such an order had the requisite finality and independence of the criminal case to be appealable under 28 U. S. C. § 1291. In the present case, the court below reaffirmed its *Cefaratti* analysis. Insofar as these decisions, resting on opinions of this Court,[33] imply a reviewability for suppression orders that would be general to cases from all Federal District Courts, we have already indicated our disagreement earlier in this opinion.

But the Government contends that appealability under the District of Columbia statutes, though it requires a "final decision," does not call for the independent or separable character of the orders in the cases relied on by the Court of Appeals, because here it is not essential to characterize an order as plenary or disassociated from the criminal case, inasmuch as the Government has a comprehensive right of appeal within a criminal case in the District of Columbia. We do not agree that the standard of "final decisions" as prerequisite to appeal is something less or different under 28 U. S. C. § 1291 as the successor to § 226 of the District of Columbia Code of 1901 than it is under § 1291 as the successor to the nationally applicable appeal provisions of the Judicial Code. Cf. *Stack* v. *Boyle,* 342 U. S. 1, 6, 12. By this we do not mean to say that § 935 of the 1901 Code is no broader than 18 U. S. C. § 3731, but merely that the underlying concepts of finality are the same in each case.

As the outline of the statutory development demonstrates, both this Court and the Congress have been strict

---

[33] *Cohen* v. *Beneficial Loan Corp.,* 337 U. S. 541; *Swift & Co.* v. *Compania Caribe,* 339 U. S. 684; *Stack* v. *Boyle,* 342 U. S. 1.

in confining rights of appeal in criminal cases in the District of Columbia to those plainly authorized by statute. We do not believe that the combined provisions of the 1901 and 1926 enactments permit the Government to appeal in any situation where the decision against it may have some characteristics of finality, yet does not either terminate the prosecution or pertain to an independent peripheral matter such as would be appealable in other federal courts on the authority of *Stack* v. *Boyle, supra.* The 1901 Code gave the Government "the same right of appeal that is given to the defendant," while the 1926 amendment to the Code restricted the defendant's right of appeal to those decisions of the Supreme Court (now District Court) that have a "final" effect, as that term is understood in defining appellate jurisdiction. We conclude that full force cannot be given to the limitations imposed on criminal appeals in the District of Columbia unless the Government is restricted as is the defendant. This is not to say "that the United States cannot appeal from a final decision unless it so happens that an opposite decision would also have been final," as the Court of Appeals suggested in *Cefaratti*. Quite to the contrary, our holding is that the statutory provisions applicable to the District of Columbia, subject to the further limitations stated therein, afford the Government an appeal only from an order against it which terminates a prosecution or makes a decision whose distinct or plenary character meets the standards of the precedents applicable to finality problems in all federal courts.[34]

---

[34] Cases cited note 33, *supra;* see also *ante,* pp. 399–408.

Since the Court of Appeals relied on precedents of general applicability to finality problems in construing the District of Columbia statutory provisions, we do not consider that this case falls within the policy that ordinarily causes us to adhere to that court's view on local law matters. Cf. *Del Vecchio* v. *Bowers,* 296 U. S. 280, 285; see *Griffin* v. *United States,* 336 U. S. 704, 712–718.

In thus defining the Government's appeal rights under § 935 of the 1901 Code, we are mindful of the considerations that motivated the Congress to specify in 1926 that interlocutory appeals in criminal cases were not possible:

> "Promptness in the dispatch of the criminal business of the courts is by all recognized as in the highest degree desirable. Greater expedition is demanded by a wholesome public opinion." S. Rep. No. 926, 69th Cong., 1st Sess.

And cf. H. R. Rep. No. 1363, 69th Cong., 1st Sess. Delays in the prosecution of criminal cases are numerous and lengthy enough without sanctioning appeals that are not plainly authorized by statute. We cannot do so here without a much clearer mandate than exists in the present terms and the historical development of the relevant provisions. Cf. *United States* v. *Burroughs*, 289 U. S. 159; *United States* v. *Sanges*, 144 U. S. 310.

The judgment of the Court of Appeals is reversed, and the case is remanded to the District Court for proceedings consistent with this opinion.

*Reversed.*