Mr. Justice Merrick
delivered the opinion of the court.
Antonio Nardello was convicted in the criminal court of murder, and his case has been brought here on exceptions taken at the trial.
The first two exceptions were to the competency of jurors.
After the exhaustion of the peremptory challenges, the name of one Watson was drawn from the box; a specific objection was made to his competency by the counsel for the accused upon the ground that he had served as a juror within two years next preceding his call as talesman under that drawing.. It was very earnestly argued by counsel for the traverser that section 812 of the Revised Statutes of the United States applied to this case. That section is in these words:
“No person shall be summoned as a juror in any circuit or district court more han once in two years, and it shall be sufficient cause oí challenge to any juror called to be sworn in any cause, that he has been summoned and attended said court as a juror at any term of said court held within two years prior to the time of such challenge.”
If that section of the Revised Statutes were applicable to the District of Columbia it would be apparent that Watson was not a qualified juror. But no one can read with a dispassionate mind this 812th section without seeing that it is exclusively applicable to the circuit and district courts of the United States within the States, and that it has no *510 application, and was never meant to have any application? to the District of Columbia.
A sufficient argument upon tbat subject is drawn from the collocation of tbe statutes themselves, for section 811 of tbe Revised Statutes, which immediately precedes this section 812, speaks with regard to certain functions in respect to tbe summoning of jurors in tbe circuit and district courts of tbe United States, in tbe courts of tbe Territories, and in the courts of tbe District of Columbia, enumerating specifically all four courts, and contradistinguishing tbe courts of tbe Territories and the courts of the District of Columbia, from tbe circuit and district courts of tbe United States. Then immediately follows this section 812, separated by a single period of punctuation, in which tbe declaration is tbat: “No person shall be summoned as a juror in any circuit or district court more than once in two years.”
TTe have there within three lines, upon tbe face of tbe statutes themselves, tbe contrast made for tbe purposes of jury service between tbe circuit and district courts of tbe United States and tbe courts of the District of Columbia. Tbat of itself would manifest tbat tbe purpose of the legislator was not to include the courts of the District of Columbia within the provisions of that section. But above and beyond tbat, and subsequent to the date of that section ■ — of section 812 — there was a specific jury law adopted for tbe District of Columbia, prescribing the qualifications, tbe terms of service, the mode of selection, and everything else appertaining to tbe sufficiency of jurors to be placed in a box for tbe trial of criminals, and tbat statute formed section 861 as it originally stood. Tbe language of tbat section was then almost indentical in terms with section 812 of tbe G-eneral Statutes, in these words:
“ Tbe names of persons drawn shall not again be placed in tbe jury box for tbe period of two years.”
But on June 8th, 1880, section 861 was amended, and in lieu of it was substituted this section:
“That section 861 of chapter 24 of tbe Revised Statutes *511 of the District of Columbia shall be, and the same is hereby, amended to read as follows:
“‘Sec. 861. It shall be good cause of principal challenge to any person called to serve as a talesman on a petit jury at any term of the criminal or circuit court of the District of Columbia, that he has served as such juror in a trial of a cause in either of said courts at any time within cine year next before his being so called or challenged.’ ”
That is the law and the only law applicable to a case of this sort now in force in the District of Columbia; andas the man Watson had not served within one year (so that he did not come within the prohibition of the statute), and there being nothing else in the statute to disqualify him, the court has no difficulty in saying that he was a perfectly competent juror according to the provisions of the law applicable to the administration of criminal justice within this District.
The next objection was made to the competency of a juror by the name of McDaniel, upon the ground that he was not a resident of the District of Columbia within the terms of the statute.
The facts in regard to him .are to be found in his own ' statement, under oath, upon an interrpgation by the court, on the challenge incorporated in the first bill of exceptions.
He stated “that his home was in Virginia; that his parents lived there, and that he returned there when out of employment elsewhere; that he votes there; that for the past fifteen years he has been spending his vacations, about two weeks in the summer in each year, at his home there; that during that period he resided in Washington, D. C.; during the balance of the year as the agent of the Virginia Midland Kailroad Company, a Virginia corporation, in the employ of which corporation, as its agent in this city, he has been during said period of about fifteen years; that his only residence here is as an agent for said corporation; that he has never been married, and that he has no present intention of leaving the employ of said company and of returning to Virginia.”
*512 That is to say, in briefer terms, he has been residing here continuously for fifteen years in the employment of a certain corporation, having his exclusive business and occupation as the agent of that corporation, with no intention of going away from the District of Columbia so long as he shall have employment; that he means to remain here indefinitely; that in point of fact, however, he does go home for about two weeks every summer, and that he does vote in the State of Virginia.
Now is he or is he not, in this state of case, a resident of the District of Columbia within the terms of the act of Congress prescribing who shall be jurors; the act of Congress saying that every citizen of the United States, who is a resident of the District of Columbia, is a competent juror within this District.
It has been, as I am advised, frequently adjudged in the several courts that such a person is a resident within the meaning of the statute. What constitutes a residence, as a matter of technical law, has never yet been defined. In other words, the term “resident” has not a technical meaning. In some statutes, and for some purposes, it means one thing; in other statutes, and for other purposes, it means another thing. For illustration, under the act of assembly, which is also in force here in this District, and which provides that a party, to make a bill of sale valid against his creditors where he remains in possession, shall have it acknowledged and recorded in the county where he resides, it has been adjudicated that a citizen of Virginia, who has personal property in the State of Maryland, and who happens to be within the State for a merely temporary and transient purpose, who has acknowledged and recorded a bill of sale of his personal property in the county where he thus temporarily is, is, for the purposes of the act of assembly, a resident of the county where he happens to be so as to give full legal integrity to his bill of sale.
But it has also been adjudicated there and in many of the other States that, for the purposes of the attachment law, a party is a resident who is within the reach of the *513 process of the court; and he is, on the other hand, a nonresident, although he claims his citizenship and his permanent home within the State, who has gone out of the State long enough to be beyond the reach of the attachment process. For the purposes of that law, sojourning out of the State for a time, though with the purpose of returning to-his home, he is a non-resident. In regard to the law about voting a man must be a resident where he is to vote. The question arose in our neighboring State in a case that is particularly in point, so far as the present inquiry is concerned, the case of Mr. Gambrill, a native of the city of Annapolis, who had lived there all his life, who was appointed to a clerkship in one of the Departments at the city of Washington (the tenure of which is, as we all know, indefinitely held at the pleasure of the appointing power), and who came here and resided here as a clerk, meaning to reside here as long as that clerkship should continue. Ho was dropped from the registry list of voters in the State of Maryland and claimed to be restored to the registry list on-the ground that he had not lost his residence in the State of Maryland.
The case was very fully argued before one of the ablest judges of the State (one of the judges of the Court of Appeals, Mr. Justice Miller), and after the fullest examination of the subject he decided that the party having come here, intending to reside here indefinitely, the mere claim that he would, at some future, indeterminate period, in a contingency which might or might not happen during his lifetime, return to his home, did not preserve his residence in the State of Maryland, and that he was a resident of the District of Columbia.
That case is on all fours with the present. This man resides here indefinitely; his only home, his only family altar, is his boarding house where his trunk is. If he were not a bachelor, but were a married man, it is quite manifest that the exigencies of his business and his occupation would require his family to be here with him, and then there would be no doubt in the mind of any man that he was, in *514 every sense of the term, a resident of the District of Columbia. The wife and children being with him, a casual visit of two weeks to the State of Virginia once a year would not make that a residence.
The fact that he is a bachelor does not give him any more residence in the State of Virginia, or deprive him of his l-esidence here, than if he were a married man. After all you have to gather the purposes of the party, the intention of the party which constitutes his residence, from his general acts. This man designed, according to every external act, and according to his own declaration, to live here so long, peradventure for his entire life, as he should retain his employment. He had in fact lived here for fifteen years. All that he had he took under the laws and the political and civil organization of the District of Columbia, and in return did he not owe a corresponding duty to the community in which he got all that he had, and derived all the means of happiness that were in his power? It will not do to say that one shall have of a community all that he can get out of the community, and, on the other, hand, shall not return to the community some corresponding obligation of citizenship. And especially does the rule apply to the District of Columbia, because the District of Columbia is part and parcel, in a large and legal sense, of every State. Each* State has an interest in it. It is a contribution, so to speak, of all the States for the public good; and the party who comes here is a resident here, has a right to reside here, and there is no alienage as between this community and the community of his origin and his birth. Therefore when he comes to reside here, although it may be for an indefinite purpose, still so long as he is here he is identified with this community as much as anybody else is identified with it, and owes the same degree of duty, service and obligation to it as any other who may reside within its limits.
Eor these reasons in part, which are in complete analogy with the doctrines which have been held upon the subject of residence everywhere else, the court is of opinion that this *515 party was also a competent juror and that the exception must be overruled.
The third exception was to the admissibility of a declaration, made by the deceased when he was last seen, as to whither he was going. The murdered man, named Rotunno, when he left on the morning of July 28th, when lie was last seen alive, left the companionship of two witnesses with the declaration, made in reply to an inquiry as to whither he was going, that he was going out to seek Nardello — to look for him. It was objected that the declaration being hearsay evidence was not competent testimony. The counsel for the traverser, although making the objection, did not argue it, and it is well that he did not, because if there be anything thoroughly settled in the law, it is that a declaration accompanying and explanatory of an act indefinite in itself, is always admissible as part of the res gestae. Where a man goes forth and is asked where he is going and he states that he is going to a particular place, that statement is always admissible, and does not at all come within the rule against hearsay evidence. 1 Greenl. Ev., sec. 108. The exception is overruled.
Then there were objections made and exceptions taken to the confessions which were made by the prisoner to two officers, one a confession made about two o’clock in the afternoon of Sunday, and the other made at about three o’clock in the afternoon of the same day. The first one was made to officer Boteler, the second to officer Riley.
These confessions standing by themselves contain no element, or suggestion of any element, of a threat or inducement held out to the party which would invalidate a confession as not having the quality of perfect volition. But the argument was made that those confessions ought to be excluded because they connected themselves with an extorted confession made to officer Boteler at about two o’clock in the morning of that day at the police station after he was arrested. It seems that he was taken to the police station and was placed in irons and afterwards taken out of the cell where he had been first placed, and brought into the *516 other room and there, in the presence of five policemen, was interrogated by officer Boteler, which interrogation was preceded by the statement: “Now I want you to answer all questions put to .you according to the truth.” Thereupon he proceeded to make certain declarations.
Now, if this first so-called confession or declaration made under such circumstances had stood by itself, there might have been a question as to the propriety of admitting it, and the judge who heard the case, at first admitted it, but afterwards, upon the development of the surrounding circumstances, excluded it from , the consideration of the jury. But he excluded it in conformity to the view which was expressed by the Supreme Court of the United States in the case of Hopt vs. Utah, in 110th U. S., where, at page 587, the Supreme Court make the remark, that “a confession made to one in authority should not go to the jury unless it appears to the court to have* been voluntary.” While there was no sufficient inducement in words, either of threat or promise held out to the party sufficient to exclude that statement, yet the judge who sat at the trial, according to the spirit of the announcement by the Supreme Court, withheld if from the jury because of the circumstances of terror that surrounded the party at the time, ironed, in the presence of five officers, one of them demanding from him that he should tell the truth. In the view of the judge who tried the case these circumstances were sufficient to cause an apprehension on his part, springing from that tender solicitude which judges ordinarily have with regard to the confession which may be made by a criminal helpless and frightened, lest the confession might not be entirely free and voluntary, and it appeared to him that it was more prudent under the circumstances to exclude the confession, and he did so. But the same judge who excluded it admitted the subsequent confessions because they were not accompanied by any of the circumstances of terror which I have mentioned, and which seemed to characterize the first interview with the officers. There was abundant time in which possible or *517 imputed apprehension in the mind of the prisoner could have'been dissipated, and the manner and the character of these interviews showed that the officers did nothing whatever to call forth the statements made by him in the interviews of two and three o’clock, because they were not only voluntary, but they were invited by the prisoner, so to speak.
At the first of these two interviews the officer went to the cell and asked him if he wanted anything to eat, speaking in the kindest and most conciliatory terms to him, thereby dispelling anything that might, in the remotest degree, have the semblance of any of the terror which applied in the mind of the judge to the early morning interview, and thereupon without any circumstance of intimidation at all, he made freely the statement which is given in the record.
And so with regard to the interview with officer Eiley at three o’clock. The same circumstances of forbearance by the officer manifested and characterized everything connected with that statement, and there was an absence of any just ground for stating or believing that whatever influences might have existed in the first interview extended to and connected themselves with that.
The Supreme Court of the United. States make some very valuable remarks upon this, subject in the case to which I have adverted, of Hopt vs. Utah, page 583 of 110 U. S. Reports. They say:
“The admissibility of such evidence so largely depends upon the special circumstances connected with the confession that it is difficult, if not impossible, to formulate a rule that will comprehend all cases. As the question is necessarily addressed,, in the first instance, to the judge, and since his discretion must be controlled by all the attendant circumstances, the court have wisejy foreborn to mark with absolute precision the limits of admission and exclusion.”
Now there is the guide, and the only rule appropriate to be laid down; that this whole matter is one to be left in a very large degree to the judgment and discretion, in *518 the absence, of course, of any specific threat and promise, of the judge who presides at the trial, who sees vividly before his mind the effect of things precisely as they are presented to the mind of the party making the confession, and precisely as they are presented to the jury, with all the influences brought to bear upon the credibility or non-credibility of the subject-matter detailed in the confession.
It is apparent to us that the judge, in the trial of the cause, had this rule in view; that he judged for himself and judged wisely; that there was nothing in the circumstances of these two later admissions made to Riley and Boteler, at the hours of 2 and 3 o’clock in the subsequent afternoon, which could rationally be supposed to connect them with and be controlled by the circumstances of terror arising out of the arraigning of a prisoner at the police station at 2 o’clock on the preceding night. And yielding our own minds under the instruction of this precept of the Supreme Court and the conduct of the judge in the trial, we are bound to say, and there is no difference of opinion or doubt entertained by any member of the court, that the prisoner had the benefit in the exclusion of the first statement of more, perhaps, than was necessary. But yet there is no criticism to be made upon the fact that it was excluded; it was just that it should be, because the mind of the judge below was more impressed, and prop-' erly impressed, than the mind of an appellate tribunal could be with regard to the circumstances surrounding the transaction and which could not be sufficiently photographed before an appellate court. But it is manifest that his indulgence in excluding the first confession or statement is a guarantee that the view which he took in respect to the confessions made at the second and third interviews fully comes up to the requirements laid down by the Supreme Court as a caution, and that full credence that is to be given by this tribunal in reviewing the action of the court to the discretion exercised, and which must be confided to the trial judge. He having (with the knowledge on our part of his exceeding forbearance in favor of the prisoner) *519 admitted these two confessions which, upon the face of them, have not the least similitude or remotest suggestion of any promise or threat made, and which were so far from the first interview as to have allowed full time for the repose of mind necessary to freedom of volition. We have no difficulty in saying that they were properly admitted.
Having thus reviewed all the exceptions taken, and there being no error apparent in any part of the record to the prejudice of the prisoner, the judgment of the court below is affirmed.