UNITED STATES of America

v.

Robert G. BAKER.

Crim. No. 39–66.

United States District Court
District of Columbia.

March 20, 1967.

See also D.C., 266 F.Supp. 456.

William O. Bittman, Austin S. Mittler, Donald Page Moore, Department of Justice, Washington, D. C., for plaintiff.

Edward Bennett Williams, and Peter R. Taft, Washington, D. C., and Boris Kostelanetz, New York City, of the Bar of the Supreme Court of New York, admitted pro hac vice, for defendant.

## MEMORANDUM

GASCH, District Judge.

On January 29, 1967, a petit jury in the District of Columbia found the defendant, Robert G. Baker, guilty on seven counts of a nine-count indictment. Following his conviction, defendant's counsel filed extensive motions seeking a new trial, a judgment notwithstanding the verdict, and an arrest of judgment. The Court has previously considered most of the points raised by the defendant in his memorandum and can see no useful purpose in reconsidering those contentions which are the subject of its memorandum opinion.[1]

Consequently, the Court will confine itself to the points orally raised in defendant's motion for a new trial, to-wit: (1) That James Buchanan, the foreman of the jury, concealed from the Court and counsel his status as a lieutenant in the reserve of the Metropolitan Police for the District of Columbia; (2) That the Court conducted a voir dire without notice to, and outside of the presence of, the defendant and his counsel; (3) That the additional panel from which the defendant's jury was drawn was illegally summoned; and (4) That the selection process currently employed by the District of Columbia Jury Commissioners is unlawful.

The Court is of the opinion that the defendant's motion for new trial based on the alleged misconduct of juror Buchanan is without merit. Although juror Buchanan has been a reserve officer in the Metropolitan Police Department attached to the 14th Precinct for approximately seventeen years, only on a few occasions and for limited periods of time has he been called upon to serve as a special police officer as provided by § 4–133 of the District of Columbia Code. The most recent occasion was the 1965 Presidential inauguration when he served for one day. Prior to that, he served as a special officer for three days in connection with the Civil Rights March on Washington in August, 1963. On each of these occasions, Buchanan's duties consisted primarily of helping to maintain order in connection with the unusually large crowds attracted to these events. At no time has juror Buchanan been on the payroll of the Police Department nor has he received any compensation for any services he has performed as a special police officer.

The defendant contends that Buchanan concealed his status as a reserve officer by failing to respond to three questions propounded by the Court to the prospective jurors. These questions were:

(1) Is anyone connected with the police department or the fire department of the District of Columbia?

(2) Is anyone of you a special police officer?

(3) Are any of you an employee of the United States Government or the District of Columbia Government?

■ Before granting a new trial on the grounds that a prospective juror failed to disclose material facts during an examination as to his qualification, it must be shown to the Court's satisfaction that the juror deliberately attempted to deceive the Court by intentionally concealing facts reasonably called for by a

---

1. United States v. Baker, 262 F.Supp. 657 (D.C., 1966). The reasons for other rulings are set forth in the file.

question and that the defendant was prejudiced thereby. Carpenter v. United States, 69 App.D.C. 306, 100 F.2d 716 (1938); Orenberg v. Thecker, 79 U.S. App.D.C. 149, 143 F.2d 375 (1944); Marshall v. United States, 355 F.2d 999 (9th Cir. 1966); and Bal Theatre Corp. v. Paramount Film Distributing Corp., 206 F.Supp. 708 (S.D.Calif.1962). Such is not the case here.

▆ When routine questions were propounded to the augmented panel of prospective jurors on January 4, 1967, respecting police service, juror Buchanan's silence regarding any connection he may have with the Metropolitan Police Department was clearly not the result of any intentional concealment or deceitfulness. This is amply demonstrated by the fact that in April, 1966, Buchanan, after responding to this exact question, was told by the then Chief Judge that he was not a police officer. Not unnaturally, Buchanan understood the Chief Judge's statement to mean that he need not have responded to the question initially. Therefore, as Buchanan testified at the hearing on these motions,[2] when this same question was asked of him eight months later in January, 1967, he felt there was no reason to supply an answer which another judge had previously told him was not required.

Juror Buchanan had no reason to respond to the question "Is anyone of you a special police officer?" because at that time he was not a special police officer and had not been since the Presidential inauguration in January, 1965.

As to the third question, which was propounded by the Court on the January 9th voir dire at the request of the defense, regarding employment by the United States Government or the Government of the District of Columbia, juror Buchanan responded that he was an employee of the United States Government, Bureau of Census. He did not respond that he was an employee of the District of Columbia Government for the simple reason that he was not so employed. His service with the Reserve Corps of the Metropolitan Police Department was completely voluntary and without compensation.

The Court feels it is significant that of the 68 questions proposed by the defendant and asked by the Court on voir dire, none were designed to elicit the information which he now contends Buchanan intentionally concealed. The simple fact is that if the defense wished to elicit information whether any prospective juror was a policeman, a special policeman, an auxiliary policeman, or a relative of a policeman, it would have been quite easy to request that such a question be asked. This the defense did not do.

In light of the above facts and in view of the complete absence of a showing of prejudice to the defendant, the Court concludes that the juror Buchanan neither falsely answered any question propounded to him nor did he intentionally conceal any material facts within the meaning of the law. Accordingly, the defendant's motion for new trial based on these grounds will be denied. Even if the criteria set forth in the dissenting opinion of Chief Judge Bazelon in Daniels v. United States, 123 U.S. App.D.C. 127, 357 F.2d 587 (1966), and cases cited therein were applied to the facts disclosed at the hearing on these motions, the same result would be reached.

The defendant also contends that the Court conducted a voir dire on January 4, 1967, in violation of Rule 43 of the Federal Rules of Criminal Procedure and his rights under the Sixth Amendment.

▆ The January 4 hearing was held for the purpose of hearing excuses from the additional prospective jurors who were called to augment the January panel. Such a meeting with the Court is designed to ascertain the general qualifications of the prospective jurors and to afford the panel of prospective jurors an opportunity to present their reasons for wishing to be excused.

2. Tr., pp. 40–41, March 10, 1967.

Neither the defense nor the Government has any standing to be heard insofar as the granting or denial of these excuses is concerned at this preliminary stage. As such, the January 4 hearing did not constitute a part of the voir dire, but rather was an administrative preliminary to the selection of the prospective panel for the January term. Thus, since this hearing did not constitute either a "step in" or a "stage of" the trial, neither the defendant nor his counsel were entitled to be present. Welch v. Holman, 246 F.Supp. 971 (N.D.Ala. 1965), aff'd 363 F.2d 36 (5 Cir., 1966).

The defendant further contends that the Court's summoning of additional jurors for the January term was unauthorized and on this basis a new trial should be granted. The additional jurors were summoned in accordance with and pursuant to 11 D.C.Code § 2309, which provides:

> "When persons drawn as grand or petit jurors cannot be found, or prove to be incompetent, or are excused from service by the court for which their names were drawn, the jury commission, under the order of the court, shall draw from the box the names of other persons to take their places, and if, after the organization of the jury, vacancies occur therein, the commission shall fill them in like manner."

Records of the Court indicate that on December 7, 1966, the Jury Commission drew the names of 700 prospective jurors for service during the January term. These jurors were summoned to appear on December 22, 1966. Of the 700 prospective jurors summoned, only 341 were accepted for service and the remainder were either excused [3] or unavailable. The Court, aware of the difficulties inherent in obtaining a jury which would be sequestered and not wishing to disrupt the other eleven district courts then scheduled to conduct jury trials, ordered the Jury Commissioner to draw the names of an additional 335 jurors to replace those previously excused or unavailable. The additional names were drawn on December 30, 1966, and these individuals were summoned to appear on January 4, 1967, for service on or after that date. From these 335 additional prospective jurors, 175 were eventually accepted for jury service.

■ The defendant complains that the names of these additional prospective jurors were not drawn ten days prior to the January term in violation of 11 D.C.Code § 2306. The Court is not persuaded that the ten-day provision of § 2306, supra, is applicable to the filling of vacancies or deficiencies in a panel under § 2309, supra. Assuming, however, that the ten-day provision of § 2306 should be applied to the filling of vacancies under § 2309, that section is intended for the protection and convenience of the prospective jurors and does not relate to the question of affording the defendant a fair trial. In any event, the Court finds that the defendant has in no way been prejudiced by this so-called "lack of notice" and accordingly, his motion for a new trial on this basis will be denied.

■ Finally, in addition to the points discussed above, the defendant contends that the Court was in error when it denied his motion to strike the jury panel which was filed January 9, 1967, the day the trial was scheduled to begin. The Court feels that the motion was untimely filed which, standing alone, is sufficient grounds to deny the motion. United States v. Hoffa, 235 F.Supp. 611, 613 (1964). However, there is an additional basis for the Court's ruling.

■■ It is well established that one challenging the constitution of a jury panel has the burden of demonstrating that some recognized class has been improperly excluded and that such exclusion was the result of the deliberate, purposeful and systematic action of the Jury Commissioners. Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93

---

3. The judges of this Court who excused the jurors were not aware of the decision of this Court to sequester the jurors in the instant case.

L.Ed. 187 (1948); Fay v. People of State of New York, 332 U.S. 261, 67 S.Ct. 1613, 91 L.Ed. 2043 (1947); and Ware v. United States, 356 F.2d 787 (1965). The defendant has failed to demonstrate that a specific class or group was systematically excluded by the Jury Commissioners or that there has been any exclusion at all of persons qualified to act as jurors. In fact, there is strong evidence to the contrary. See Affidavit of Jury Commissioner Bliss, filed with the Government's Memoranda in Opposition to Motion to Dismiss Indictment and to Strike Panel, United States v. Love, Criminal No. 260–65. Such a failure requires that the defendant's motion to strike the jury panel be denied. Frazier v. United States, supra, 335 U.S. at 503, 69 S.Ct. 201.

Other points raised in the motions have been considered and the Court finds them without merit.