**UNITED STATES of America**

v.

**Barry HAYWOOD.**

**Cr. No. 690–68.**

United States District Court

District of Columbia.

Aug. 8, 1968.

---

James A. Strazzella, Lee Freeman, Asst. U. S. Attys., for the United States.

Michael Nussbaum, John W. Vardaman, Jr., Washington, D. C. for defendant Haywood.

## MEMORANDUM OPINION

GESELL, District Judge.

The Court has before it a motion to dismiss this three-count indictment charging Second Degree Burglary, Petty Larceny and Engaging in Riot on the ground that the April Special (2) Grand Jury sworn April 23, 1968, which returned the indictment, was unlawfully constituted in contravention of the Constitution by reason of defects in the jury selection process. The matter has been thoroughly briefed. The motion and opposition are both supported by affidavits and the Court heard full argument after granting a limited evidentiary hearing.

Three basic defects in the selection process are urged:

(1) The exclusion of women who indicated they do not wish to serve;

(2) The inclusion of persons who maintain voting residence outside the District of Columbia; and

(3) The evaluation of prospective jurors based upon an improper questionnaire.

The motion does not suggest any irregularity peculiar to the selection of the grand jury returning this indictment. This particular special grand jury was selected in accordance with established procedures which have been followed for grand juries in this jurisdiction over the years. In summary, these procedures, which in large part are governed by the provisions of 11 D.C.Code § 2301, are as follows:

Names of prospective jurors are selected at random from Polk's City Directory. A questionnaire and simple covering letter is then sent to each name so selected. If no response is obtained, three written follow-ups are sent, and, failing satisfaction, a personal interview is attempted with the prospective juror. Incomplete questionnaire answers are returned for completion and the same follow-up procedure is pursued in this regard. Some recipients come in personally to the counter of the Jury Commission for assistance in completing their responses. The bulk of the questions in the questionnaire relate directly and specifically to the ability of a prospective juror to qualify as a juror in the light of the various Code exemptions. Other questions, as will later appear, seek more general information. When completed questionnaires are received they are coded by experienced trained personnel to remove all persons clearly ineligible by reason of occupation, illiteracy, criminal record, etc. All other questionnaires, including all doubtful cases, are held for review by the Jury Commissioners.

The culled questionnaires are divided among the three commissioners in approximately equal number and reviewed by them. The commissioners confer on occasion but have no written standards for questionnaire evaluation. They are guided in this by the decisions of this Court and the language of the Code, and they exercise discretion in the light of their experience. In some instances commissioners request the prospective jurors to come in for an interview before accepting or rejecting a particular juror. A substantial number of eligible jurors are available at all times to be drawn in accordance with the appropriate proce-

dures as juries are required. Ultimately, of course, as is well known in this jurisdiction, the Court itself reviews a number of questionnaire responses of jurors found qualified by the commissioners, hears excuses and accepts or rejects particular jurors. This process is necessarily selective but there is no requirement that every person eligible under the Code must be chosen and the Code does not prohibit the normal exercise of common-sense judgments in the matter. It is against this general background that the particular contentions of defendant-movant must be considered.

■ First, as to the exclusion of women who indicate they do not wish to serve, it is a fact that if a woman in her response to a questionnaire states she does not wish to serve, she is excused but her willingness to serve is encouraged. This is in accord with the specific Code provisions authorizing such exemption. 11 D.C.Code § 2301(b); Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L. Ed.2d 118 (1961). Defendant appears to complain that this so-called "blanket exclusion of women" results in the disproportionate selection of women from Government service. In fact, it is neither a blanket exclusion of women nor has it been shown that it unduly weights the jury with Government employees. Not only is it well settled that Government employment does not imply bias, Frazier v. United States, 335 U.S. 497, 69 S.Ct. 201, 93 L.Ed. 187 (1948); Dennis v. United States, 339 U.S. 162, 70 S.Ct. 519, 94 L.Ed. 734 (1950), but the facts as to this particular grand jury refute movant's contention. Of the 23 members of the April Special (2) Grand Jury, 13 are women and 6 of these women are employed by the United States Government and it is to be expected in this jurisdiction that Government employees will be found on juries in some number. Movant has failed to show any intentional systematic arbitrary or unreasonable exclusion of women in the selection of grand juries and indeed nothing more than a scrupulous adherence to appropriate procedures in the selection of women

for this particular grand jury has been demonstrated.

■ Second, as to the inclusion of persons who maintain voting residence outside the District of Columbia, it appears that in fact all 23 members of this particular grand jury do not vote elsewhere. It has been uniformly the practice in this jurisdiction not to disqualify jurors who vote elsewhere if they have in fact the necessary residence in the District of Columbia. United States v. Nardello, 15 D.C. (4 Mackey) 503 (1886); United States v. Cross, 20 D.C. (9 Mackey) 365 (1892), appeal dismissed, 145 U.S. 571, 12 S.Ct. 842, 36 L.Ed. 821 (1892). Indeed, it has been suggested that such exclusion would be improper. Young v. United States, 94 U.S.App.D.C. 54 (1954), cert. denied, 347 U.S. 1015, 74 S.Ct. 870, 98 L.Ed. 1137. Again, movant has totally failed to establish any impropriety in the selection of this grand jury.

The principal objections urged by the defendant and the issue which dominated the arguments and hearing concern the propriety of two questions found in the questionnaire: questions 16 and 29. These questions read as follows:

"16. Have you ever been arrested in the District of Columbia or elsewhere? If so, give date, place and nature of each offense."

"29. Have you any views opposed to the form of government established by the U. S. Constitution?"

■ Both questions elicit information which could clearly be pertinent to eligibility for jury service.

As to arrests, particularly those of recent origin, the frequency and nature of arrests might well suggest the prospective juror's ability to meet appointments (e. g., chronic drunk) or bear on the person's reliability or give significance to other answers to other questions. Where a prospective juror is recently a resident of the District, the information may indicate the juror's stability in the communities from which he has come. In the instance of the Spe-

cial Grand Jury concerned with the April disorders, it would obviously have been inappropriate for individuals arrested during these disturbances to serve. Police records are obtained in all cases and a negative response to the arrest question takes on significance where reference to police records discloses recent arrests thus concealed. These are but examples. They are sufficient to justify the question. The claim that other federal jurisdictions do not ask this question is of little significance, for this Court must select jurors who qualify both under the general statute and the applicable D.C.Code provisions as well.

The question concerning views opposed in some aspect to our constitutional form of government, while not felicitously phrased, is also directed toward relevant information. If in a subsequent interview with an individual answering affirmatively it should develop, for example, that the prospective juror did not believe in trial by jury, his ineligibility would clearly be established. This type of question is not unique. Cf. United States v. Mesarosh, 13 F.R.D. 180 (W.D. Pa.1952).

■ Defendant must establish more than the fact such questions are asked. The issue is the use to which answers are put and the purpose underlying them. They are but part of a questionnaire clearly designed to carry out the responsibility of the Jury Commissioners, who, under the Code, must exercise some discretion in jury qualification matters in seeking "intelligent and upright" citizens. 11 D.C.Code § 2305. The proofs showed that persons with arrest records have served and that no prospective juror has been excluded by the Jury Commissioners solely because of responses to either of these questions. The Court itself exercises some responsibility in the matter of jury qualification and undoubtedly a good number of persons have been excluded by the Court or the Jury Commissioners because of the nature and extent of an arrest record viewed in the light of the total questionnaire response. This is something far short

of systematic and deliberate exclusion such as the Constitution condemns. Thiel v. Southern Pacific Co., 328 U.S. 217, 66 S.Ct. 984, 90 L.Ed. 1181, 166 A.L.R. 1412 (1946). Indeed, considering the variety of possible arrests and the fact that persons of every economic, religious, racial or social group and of every age, sex or occupation are arrested, even a considerable degree of exclusion would not make the jury nonrepresentative, for persons arrested are not a cohesive group. The same may be said for those who respond affirmatively to the question as to constitutional attitudes, although it is not shown that any number of affirmative responses have been received to this dubious inquiry.

Defendant urges that only a questionnaire that seeks information as to specific Code disqualifications or exemptions from jury service is proper. 11 D.C.Code §§ 2301, 2302. Recognizing that the commissioners are also directed to select, as nearly as may be, intelligent and upright citizens, 11 D.C.Code § 2305, defendant argues that this provision, not in itself a specific disqualification or exemption, should be ignored because it has been repealed by implication, but this contention is without merit.

The defendant suggests that a vice of the challenged questions is that they deter individuals from responding and that in consequence qualified individuals are passed over. The evidence refutes this. Failure to respond is intensely followed up with three subsequent letters and if still no response is obtained then a personal interview to achieve a completed questionnaire is arranged if the individual can be located in the city.

Defendant served a searching subpoena duces tecum on the Jury Commissioners to obtain records going back many years relating to thousands of questionnaire responses. The Government moved to quash. The Court permitted a limited evidentiary hearing for the taking of testimony to determine, among other things, the propriety of requiring an elaborate, expensive, time-consuming search of the confidential records of the Jury Commis-

sion. The Chief Clerk and the Secretary of the Commission each testified, presenting facts as to the manner in which questionnaire responses were analyzed and the purposes served by the challenged questions. It appears that the Jury Commissioners are carrying out their duties under the Code. There is no plan or systematic procedure for eliminating any identifiable group of persons or for distorting the respresentative character of the juries selected.

No member of this Court in daily contact with jury panels can doubt their representative nature. Indeed, the composition of the Special Grand Jury here under attack bears witness to the fair operation of the system. Of the 23 members, 6 women and 7 men work for the Government; ages of members range from 30 to 74; and many varied occupations, backgrounds and skills are represented. There have been frequent reviews of the jury selection procedures * and the Court itself has been intimately concerned in the process.

 The burden was upon the movant to introduce distinct evidence that the Jury Commissioners did not perform their duties properly. Frazier v. United States, 335 U.S. 497, 503, 69 S.Ct. 201, 93 L.Ed. 187 (1948). The Code requires the commissioners to exercise discretion since it merely establishes minimum requirements. 11 D.C.Code § 2305, United States v. Ware, 237 F.Supp. 849 (D.D.C. 1964), affirmed, 123 U.S.App.D.C. 34, 356 F.2d 787 (1965), cert. denied, 383 U.S. 919, 86 S.Ct. 914, 15 L.Ed.2d 673 (1966). A review of thousands of questionnaire responses is not warranted. It would take literally months of work to attempt to reconstruct what has occurred

on a question-by-question basis and it is very doubtful this could ever be done. A new jury selection system under the new Act is about to go into effect. On the showing made the enforcement of the subpoena is not justified or necessary.

The Court has considered all points raised on the motion and at argument and finds them without merit. The motion is denied and the subpoena duces tecum quashed. Counsel shall submit an appropriate order.

---

* This Court, for example, recently dealt with similar contentions in United States v. Baker, 266 F.Supp. 461 (D.D.C.1967), concluding:

> "The defendant has failed to demonstrate that a specific class or group was systematically excluded by the Jury Commissioners or that there has been any exclusion at all of persons qualified to act as jurors. In fact, there is strong evidence to the con-

trary. See Affidavit of Jury Commissioner Bliss, filed with the Government's Memoranda in Opposition to Motion to Dismiss Indictment and to Strike Panel, United States v. Love, Criminal No. 260–65. Such a failure requires that the defendant's motion to strike the jury panel be denied. Frazier v. United States, supra, 335 U.S. at 503, 69 S.Ct. 201." 266 F.Supp. at 465.